IN THE MATTER OF THE WILL OF BART M. GATLING.

(Filed 12 December, 1951.)

**1. Evidence § 46b—Expert's reference to manner in which testator made certain letters held not prejudicial as personifying testator.**

Caveator admitted that the body of the will was in testator's handwriting, it being controverted by the parties only as to whether an interlineation therein was written by testator. Photostatic copies of the instrument in natural size were given the jury in order to enable them to follow the testimony. *Held:* Testimony by an expert, in undertaking to point out the reasons for his opinion in respect of the interlineation, that testator (calling his name) would make a particular letter in a certain manner, etc., was merely the witness' method of referring to the letters of the writing admitted to be in testator's handwriting, for the purpose of comparison, and cannot be held prejudicial. G.S. 8-40.

**2. Wills §§ 9½, 25—**

In order to be effective, an interlineation or alteration substantially changing the provisions of a holographic will must be executed in conformity with G.S. 31-5, and therefore, in applying the law to the evidence in this case, an instruction to the effect that an interlineation in the handwriting of testator would not be a part of the will unless testator placed the altered writing in an envelope and wrote his name on the back thereof *is held* without error.

APPEAL by propounder John Gatling from *Bone, J.,* at June Term, 1951, of WAKE.

Civil action, an issue of *devisavit vel non,* upon caveat filed by Louie G. White, daughter of Bart M. Gatling, deceased.

The caveator, in her caveat, set forth, among other things:

(1) That Bart M. Gatling, late of the County of Wake, died in said county on 2 August, 1950.

(2) That on 4 August, 1950, John Gatling presented to the court a paper writing, Exhibit A, purporting to be the holographic last will and testament of Bart M. Gatling, and same was admitted to probate in common form, and letters testamentary were issued to John Gatling as the executor of Bart M. Gatling.

(3) That the paper writing so probated reads in pertinent part:

"Raleigh, N. C., Jan. 24, 1950.

"I Bartholomew Moore Gatling, do make, publish and declare this as my last will and testament, hereby revoking all previous wills made by me.

"Item 1. I give devise and bequeath all of my property both real and personal to my very faithful and devoted wife Lenora Crudup Gatling in Trust for herself for life and after her death equally to my children, and if any child or children be dead leaving any lawful issue then alive

such issue shall take the share, his her or their parent would have received if alive, *per stirpes.* . . .

"Item 5. I direct that the 13 lots facing South on E. Martin Street and numbered 143, 144, 145, 146, 147, 148, 149, 177, 178, 179, 180, 181 and 182 shall not be subject to the provisions of Item *One* of this will during the life of my wife, but that in the final distribution or division of my lands, they be allotted to Bart M. Gatling, Jr., James Moore Gatling, Louie Gatling White, Claude B. Barbee 3rd and Sarah Gatling Barbee and John Gatling one lot at least to each

and accounted for in the division—and with the request that they hold the same as a protection against any undesirable encroachments in close proximity to the home. That if any of them need to sell their part of these lots—they first offer the same to Louie Gatling White or other member of the family then owning the Home Place. If however the home should pass out of the family this request is not to have any force or effect. . . .

"Item 8. I appoint my son John Gatling as Executor of this will, written in my own handwriting, . . .

"In witness whereof I have hereunto set my hand and seal, the day and year first above written.

                    "BARTHOLOMEW MOORE GATLING  (Seal)."

(4) That the said paper writing of which Exhibit A is a copy is not in its entirety the last will and testament of the said Bart M. Gatling, deceased, for the reason, among others, as this caveator is informed and believes, the interlineation in Item 5 of said will in words as follows, to wit: "and John Gatling one lot at least to each," was obtained by the said John Gatling through undue and improper influence exercised over and upon the said Bart M. Gatling by the said John Gatling . . ., etc.

The caveat was amended by adding a new paragraph which reads as follows:

"V½. That the interlineation in Item 5 of the said will was made subsequently to the execution of the will and the name of Bart M. Gatling, the maker of the will, is not signed to, nor does it appear in said interlineation, which interlineation is in words as follows: 'and to John Gatling one lot at least to each'; that as this caveator is informed and believes and therefore alleges, said interlineation does not conform to the provisions of the General Statutes of North Carolina and does not constitute a part of the will of Bart M. Gatling."

John Gatling, executor, answering the caveat, denies the allegations in respect of the said interlineation in Item 5, but admits all other allegations of the caveat, and prays that the court adjudge the paper writing

and each and every part thereof to be the will of Bart M. Gatling, and that same be probated in solemn form.

The proceeding was transferred to the trial docket of Superior Court, and there, after citations served on or accepted by interested parties, same was tried.

After the jury was impaneled and the pleadings read, and before the introduction of evidence, counsel for caveator stated: "The caveator does not contest the will except as to the interlineation in Item 5, consisting of nine (9) words, as follows: 'and John Gatling one lot at least to each.' We admit the body of the will, with the exception just noted, as the will of Mr. Bart M. Gatling, deceased."

Thereupon, the propounder offered evidence tending to show the following: (1) The identity of the paper writing purporting to be the last will and testament of Bart M. Gatling, deceased, as probated in common form, designated as Exhibit A, and of the opened envelope in which same was presented for such probate, designated as Exhibit B.

(2) That on 4 August, 1950, Exhibit B, then sealed, was taken from a locked metal box found in the secretary in the home of the late Bart M. Gatling, and opened by breaking the seal thereof, and the paper writing, Exhibit A, was taken from the envelope all in the presence of members of the family and then read by an attorney.

(3) The testimony of more than three persons acquainted with the handwriting of Bart M. Gatling, to the effect that the paper writing Exhibit B, and every part thereof, as well as the words and figures "My will. Bart M. Gatling. 1950," written on the outside of the envelope Exhibit B are in the handwriting of Bart M. Gatling. And while each of the witnesses, under cross-examination, take note of difference in the appearance of the writing of the words constituting the interlineation in Item 5, each stated that in his or her opinion, as the case may be, these words are in the handwriting of Bart M. Gatling.

Thereupon Exhibit A was offered in evidence. And Exhibit B with the following written on it: "My will. Bart M. Gatling," was also offered in evidence.

The caveator then offered the testimony of several witnesses tending to show:

That Bart M. Gatling became ill in the latter part of 1949, and was carried to Duke Hospital, and stayed there from 25 November to 5 December; that he became "very ill" and again was taken to Duke Hospital on 25 January and was there until about 17 February; that while he grew worse gradually both physically and mentally until his death, he retained his mental faculties until about two weeks before his death.

The caveator further offered evidence tending to support the allegations of the caveat,—the details of which are unnecessary to decision on this appeal.

The caveator, Mrs. Louie G. White, testified that she is familiar with, and knows the handwriting of her father, Bart M. Gatling,—having carried on regular correspondence with him, and that, in her opinion, the handwriting in which the controverted interlineation in Item 5 of the will of Bart M. Gatling is written, is not his handwriting.

The caveator also offered a witness as an expert examiner in the field of questioned documents and "all matters pertaining to pen and ink writings, pencil writing, paper, ink, intersection of lines, creases in paper, sequence in writing," etc. He testified that he has examined Exhibit A in this case; that it is written on a sheet of paper mechanically folded in the center,—thus making it a four-page document;—the description being substantially as follows: The writing begins on the right outside page, and extends to the left outside page, and then to two inside pages left to right, and ends on page four; that there are thirty-six lines on page two, and the interlineation in Item 5 appears at line nineteen; and that as folded there is a crease in the paper at the interlineation.

The witness further testified that he has made examination of the handwriting of Bart M. Gatling, using as a standard the admitted handwriting of Bart M. Gatling as same appears in the body of his will, Exhibit A; that in his opinion an appreciable length of time existed between the writing of the body of the will and the inscribing of the words "and John Gatling one lot at least to each"; that in his opinion also that these quoted words were added, following the writing of the body of the will, including the testator's signature and the seal found on page four of the will; that he bases his opinion upon this ground that the body of the will from page 1 to page 4 was written in one kind of ink, and the words "and John Gatling one lot at least to each" in an entirely different manufacture of ink; and upon the further ground that the body of the will was written before the sheets were folded, and the above quoted words after the will was folded; and that he is strongly inclined to the opinion that the handwriting in the interlineation in Item 5 is not in the handwriting of Bart M. Gatling.

And this witness testified in detail as to reasons on which he bases his opinion. In this connection six sets of photostatic reproductions of the will, Exhibit A, in natural size, were, with permission of the court, given to the jury so that each two of them might share a copy and follow the testimony of the witness. Then the witness proceeded to compare the letters, individually and in word combination, in the interlineation in Item 5 with the same letters individually and in word combination in the body of the will,—pointing out in detail characteristics in the admitted handwriting of Bart M. Gatling, as distinguished from those in the words "and John Gatling one lot at least to each" as same appears in Item 5 of the will.

In the course of his testimony, propounders complained of the manner in which the witness pointed out the characteristics in the handwriting of Bart M. Gatling,—asserting that he was personifying Gatling, and speaking to the jury, rather than testifying as a witness.

The caveator offered in evidence various exhibits used by the handwriting expert witness in the course of his testimony, including photographic enlargements of portions of the writing, and same were admitted in evidence not as substantive evidence but only for purpose of illustrating the testimony of the witness.

Propounder in rebuttal offered as witnesses two handwriting experts, each of whom testified that he is familiar with handwriting of Bart M. Gatling; that he is of opinion that the writing on end of Exhibit B, reading "My will. Bart M. Gatling. 1950," is the signature of Bart M. Gatling; and that in his opinion the words "and John Gatling one lot at least to each" are in the same handwriting as the body of the instrument.

And the propounder, John Gatling, testified: "I saw a paper, very similar to his will, and my father asked me to get him an envelope. My father was sitting at the table in his room, the southeast corner of the room, and he was writing on the paper." Then on cross-examination he continued, "The first time he saw his father's will was one Sunday in June, at about 3 P.M., when he saw him sitting at a desk and writing half-way in the middle of a page, the upper page, and my father asked me to get an envelope in which to seal his will. My father could walk at that time . . . I do not remember what Sunday in June I saw the will, that was the only time I saw it. I had not made any inquiry about it. My father had told me some things about his will. I did not ask my father about it at Duke Hospital in February. My father had told me then that he had made his will . . . that it was in his handwriting; that he, John Gatling, was the executor and that such a will was illegal unless found among the dead man's valuable papers. My father did not say that it was among his valuable papers, but that it was in the tin box marked Robert Gatling in James' secretary in the living room, among his valuable papers. I did not assist my father to obtain the will on the day in June when I saw it. My father was sitting at the table writing; that as I came to the door my father asked me for an envelope and I went past the table to a little room where my father's office furniture was stored and got a brown envelope just like that in which we found my father's will. I did not put the will up, nor do I know who did. Father folded his will, stuck it in the envelope, sealed it and started walking to the door after he finished writing on the envelope. He walked out of the room with the will in his hand. The will was found in the front room in James Gatling's secretary, in a tin box marked Robert Gatling. The box was in the top of the secretary . . . an old-fashioned kind with doors

that could be opened . . . and to my knowledge Mr. Farmer opened the doors and got the box out . . . I do not know what pen Father was using, but it was similar to the one counsel had up in court this morning. He had not folded the will, but he (I) saw his (my) father fold it. I did not see what my father had written, but that he was writing about the middle of the page."

The case was submitted to the jury upon these two issues which the jury answered as shown:

"1. Is the paper writing propounded for probate and each and every part and clause thereof the last will and testament of Bart M. Gatling, deceased? Answer: No.

"2. If not, is the paper writing propounded for probate and every part and clause thereof except the interlineation in Item 5, line 19, 'and John Gatling one lot at least to each,' the last will and testament of Bart M. Gatling, deceased? Answer: Yes."

From judgment in accordance with the verdict the propounder appeals to Supreme Court, and assigns error.

*I. W. Farmer, Allen Langston, and Brassfield & Maupin* for propounder, appellant.

*John W. Hinsdale and Frank S. Katzenbach, III,* for caveator, appellee.

WINBORNE, J. The assignments of error presented by appellant on this appeal are based in the main upon exceptions, I, to the testimony of the handwriting expert introduced by the caveator, and, II, to portions of the charge. These will be considered in this order.

I. Propounder in his brief filed in this Court states that all of his exceptions to the testimony of the handwriting expert come down to these points: "1. His insistence upon personifying the writer as 'Mr. Gatling,' describing his habits, and stating what 'Mr. Gatling' or 'the writer' would do or would not do.

"2. He insisted upon repeated graphic demonstrations of just how 'Mr. Gatling' did or did not form certain letters or combinations of letters.

"3. In spite of repeated objections by counsel, and frequent admonitions by the court, his discourse throughout was simply an argument delivered from the witness chair rather than the testimony of a witness."

In this connection it is provided by statute G.S. 8-40 that "In all trials in this State, when it may otherwise be competent and relevant to compare handwritings, a comparison of a disputed writing with any writing proved to the satisfaction of the judge to be genuine, shall be permitted to be made by witnesses, and such writings and the evidence of witnesses respecting the same may be submitted to the court and jury as evidence

of the genuineness or otherwise of the writing in dispute: Provided, this shall not apply to actions pending on March 5, 1913."

This statute was enacted by the General Assembly of 1913, and ratified 5 March, 1913, and later became Section 1784 of Consolidated Statutes of North Carolina 1919. It has been referred to in decisions of this Court, and applied in others. See *Boyd v. Leatherwood,* 165 N.C. 614, 81 S.E. 1025; *Bank v. McArthur,* 168 N.C. 48, 84 S.E. 39; *Newton v. Newton,* 182 N.C. 54, 108 S.E. 336; *Gooding v. Pope,* 194 N.C. 403, 140 S.E. 21. See also Stansbury's North Carolina Evidence, Sec. 198 *et seq.*

While prior to the enactment of this statute it seems to have been settled law in North Carolina that an expert witness in the presence of the jury might be allowed to compare a disputed paper with other papers in the case, whose genuineness was not denied, and that the jury must pass upon its genuineness upon the testimony of witnesses, and that no comparison by the jury was permitted. See *Outlaw v. Hurdle,* 46 N.C. 150; *Tunstall v. Cobb,* 109 N.C. 316, 14 S.E. 28, and cases cited.

But after the enactment of this statute, this Court in *Newton v. Newton, supra,* recognized "an unequivocal declaration of change in the rule obtaining theretofore." And in the opinion it is said: "As we understand the statute, the admission of testimony as to the genuineness of a writing by comparison of handwriting is now on the same basis as the declarations of agents. The court determines whether there is *prima facie* evidence of agency or of the genuineness of writing admitted as a basis of comparison, and then the testimony of the witnesses and 'the writings' (in the plural) themselves are submitted to the jury."

To like effect is the holding in *Gooding v. Pope, supra.* And in the *Gooding case* the use of a magnifying glass, with permission of the court, is recognized.

Moreover, this Court in the case *S. v. Young,* 210 N.C. 452, 187 S.E. 561, held that the trial court erred in excluding the testimony of a handwriting expert in giving his reasons for his opinion that a certain signature was not genuine. And *Schenck, J.,* wrote for the Court: "Our holding is based upon the fact that the conclusion of a handwriting expert as to the authenticity or nonauthenticity of a signature, standing alone, might be of little or no probative force, but if his conclusion be supported by cogent reasons, it would be strengthened and its value as evidence correspondingly enhanced. When the reasons of the witness are given, the jury is afforded a better opportunity to determine the soundness of his conclusion."

Applying these principles to the situation in hand of which appellant complains, it must be borne in mind: That the body of the will, admittedly in the handwriting of Bart M. Gatling, was used as the standard

IN RE WILL OF GATLING.

of his handwriting; that the jurors had before them photographic copies of the will, in natural size; and that the witness was undertaking in his testimony to point out to the jury, as reasons for his opinion in respect of the interlineation in dispute, characteristic formation of certain letters individually and in word combination, peculiar to the handwriting of Bart M. Gatling, as found in the standard handwriting, and then to compare them with the same letters, individually and in word combination, as found in the interlineation. For instance, in comparing the two, and referring to the former, the witness said, without objection, "You'll observe that Mr. Gatling would make his 'n' in a form that if you were to lift it from the context, the 'n' in 'and,' you would have a form that approximates the letter 'u' that is in the handwriting of Mr. Gatling's, and that is true of the two 'ands' to which I have referred . . ." Thus it seems clear that the witness was merely using a short-hand method of referring to the letter as it appeared in the standard handwriting. Hence, after careful reading of the testimony of the witness, and the rulings of the trial judge, we conclude that the witness was kept within the bounds of expert testimony, and that no prejudicial error is made to appear.

II. As to the assignments of error based upon exceptions to portions of the charge, it is well to bear in mind the theory upon which the case was tried in Superior Court. In this connection, let it be noted: (1) That the wording of the interlineations in Item 5 materially alters the effect of Item 5 as it appears without the interlineation. (2) That as is seen from the charge, as set out in the record, the court stated the contentions of the parties as follows: "Now, as to the interlineation which is found on the second page of propounder's Exhibit A the words 'and John Gatling one lot at least to each,' there is a serious controversy between the caveator and the propounder . . . it being contended by the caveator that . . . the interlineation is not in the handwriting of the testator . . . On the other hand, the propounder contends that the interlineation or alteration is in the handwriting of the testator Bart M. Gatling, deceased, and that after making it he placed it in an envelope and wrote on the outside of it 'My will' and signed his name 'Bart M. Gatling.'" (3) That the propounder bases one of his prayers for instruction on this contention. And (4) that there is evidence tending to support same, and there seems to be none to the contrary.

The court after stating the contentions of the parties as above shown, proceeded to charge the jury as follows: "Now, we have a testamentary law which prescribes how alterations in a will shall be made and executed in order to be valid; the pertinent portion of that statute is as follows: '. . . or unless the same be altered or revoked by some other will or codicil in writing, or other writing of the testator, all of which shall be in the handwriting of the testator, and his name subscribed thereto or

inserted therein and lodged by him with some person for safekeeping or left by him in some secure place or among his valuable papers and effects, every part of which will or codicil or other writing shall be proved to be in the handwriting of the testator by three witnesses at least.' (So that in order for this interlineation or alteration to be a valid part of the last will and testament of Bart M. Gatling, deceased, it would be necessary for the propounder to show by the greater weight of the evidence that the questioned interlineation or alteration was entirely in the handwriting of the testator Bart M. Gatling and that his name was subscribed thereto or inserted therein), and that it was found among his valuable papers and effects and the handwriting would have to be proved by three witnesses at least." Exception is taken to the portion in parentheses.

"The burden of proof is on the propounder to satisfy the jury by the greater weight of the evidence that the interlineation or alteration in question here was executed in that manner and that if he has failed so to do then such alteration or interlineation would not be any part of the will of the testator; but if he has so satisfied you by the greater weight of the evidence then such alteration or interlineation would become a part of the last will and testament of Bart M. Gatling, deceased, and you would then answer the first issue Yes; if he has failed so to do you would answer it No.

"Now, what is required in the way of the execution of this alteration or interlineation in order to make it valid as applied to the evidence in this case? That is a crucial question, as to that I charge you that this is the law as applied to the evidence in this case: That if the testator Bart M. Gatling wrote his will in his own handwriting, subscribed his name thereto, and subsequently took it and in his own handwriting wrote the words of the interlineation or alteration, to wit, 'and John Gatling one lot at least to each,' that the same is entirely in his handwriting, and after writing it with his own hand he took it and placed it in an envelope and in his own handwriting wrote the words 'My will' and signed his name 'Bart M. Gatling,' and placed the envelope with the altered writing in it among his valuable papers and effects, and it was found there after his death, then the requirements of the law would have been met with regard to the execution of the alteration.

"But, on the other hand, if the words of the interlineation or alteration in question here were not in his own handwriting, that is, the handwriting of the testator, then those words would not be any part of his will; (or, if they are in his handwriting, unless after making such alteration or interlineation in his own handwriting he placed the altered writing in the envelope, Propounder's Exhibit B, and wrote on the back thereof the words, 'My will Bart M. Gatling,' then it would not be a part of his will)." Propounder excepts to foregoing portion of charge in parentheses.

In connection with the above charge the statute G.S. 31-3 pertaining to formal execution of holograph wills is as follows: "No last will or testament shall be good or sufficient in law, to convey or give any estate, real or personal . . . unless such last will and testament be found among the valuable papers and effects of any deceased person, or shall have been lodged in the hands of any person for safekeeping, and the same shall be in the handwriting of such deceased person, with his name subscribed thereto or inserted in some part of such will; and if such handwriting shall be proved by three credible witnesses, who verily believe such will and every part thereof is in the handwriting of the person whose will it appears to be, then such will shall be sufficient to give and convey real and personal estate."

This statute has been pertinently applied in the case of *Alexander v. Johnston*, 171 N.C. 468, 88 S.E. 785. There two papers were offered for probate as the will of Julia W. Johnston. One of these papers was an envelope on which was written the words "Julia W. Johnston Will," and the other was a paper found on the inside of the envelope and was unsigned. The propounders offered evidence tending to prove that the words "Julia W. Johnston Will" endorsed on the envelope and the whole of the paper inclosed therein were in the handwriting of Julia W. Johnston, the testatrix; that the papers were found after her death among her valuable papers, and that she had stated prior to her death that she had made her will, and told where it could be found, which is the place where it was found—and when found the envelope was lightly sealed. The propounders contended that the envelope and the paper on the inside constituted the will of Julia W. Johnston and should be admitted to probate.

There this Court held that "the right to dispose of property by will is statutory, and can only be exercised by following the requirements of the statute"; that "these requirements, prescribed by the legislative department for the execution of a will, are essential, and cannot be disregarded"; that "all these provisions of the statute have admittedly been followed in the present case, unless there has been a failure to subscribe or insert the name of the testator in the paper offered for probate." The Court, answering the question "Has there been such failure, and what is the meaning of the language to subscribe or insert the name of the testator?," and after reviewing the authorities, held that the evidence offered was sufficient in this respect to establish the writing as her holograph will. See also *In re Will of Williams, ante,* 228, and cases cited, as to the signing of a will with witnesses.

Now the statute pertaining to revocation of wills in this State, G.S. 31-5, in so far as pertinent to case in hand, reads as follows: "No will or testament in writing, or any clause thereof, shall be revocable otherwise than by some other will or codicil in writing . . . but all wills or testa-

ments shall remain and continue in force . . . unless the same be altered or revoked by some other will or codicil in writing, or other writing of the testator, all of which shall be in the handwriting of the testator, and his name subscribed thereto or inserted therein and lodged by him with some person for safekeeping, or left by him in some secure place, or among his valuable papers and effects, every part of which will or codicil or other writing shall be proved to be in the handwriting of the testator, by three witnesses at least . . ."

It will be observed that the court in charging the jury read the latter part of this statute. And it may also be observed that the provisions in this statute for the execution of a codicil to a holograph will are substantially the same as those in G.S. 31-3 for the formal execution of such will.

Moreover, in the case of *In re Will of Watson,* 213 N.C. 309, 195 S.E. 772, this Court interpreting the statute G.S. 31-5, last above quoted, then C.S. 4135, held in effect that a revocation of a will offered for probate should be brought within a method of revocation or cancellation provided by the statute, and that "a written will duly and truly prepared and executed cannot be revoked or cancelled by verbal declarations."

Appellant speaking to the assignment of error covered by the exception to the charge as above shown, concedes here that the right to make a will is not an inherent right, and depends entirely upon legislative authorization, and that the statutory requirements are mandatory and not directory. But he contends that the construction of the statute should not be so rigid and binding as to defeat its clearly expressed purpose,—that it must be construed and enforced strictly, but at the same time reasonably.

However, in the light of the requirements of the statutes, as interpreted by the Court, applied to the evidence, on the theory on which the case in hand was tried in Superior Court, we hold that the charge as given is correct. The exceptions are not sustained.

And for like reasons the requests for instruction, which the court declined to give, were properly refused.

Other exceptions have been considered, and fail to show error.

Hence in the judgment below we find

No error.