IN THE MATTER OF THE WILL OF: CORNELIUS WINSTON ALLEN, Deceased

No. COA01-21

(Filed 5 February 2002)

## 1. Wills— holographic—words of testator—directed verdict denied

Sufficient evidence was presented to submit to the jury the question of whether the testator wrote each word of a holographic will which included the phrases "bank close" and "to and wife Valerie" written with a different pen. Although an expert testified that the disputed phrases were not in the testator's handwriting, several other witnesses testified that the testator added one of the phrases, the testator died eight years after writing the main body of the will and had suffered a stroke in the meantime, and the expert had not examined any other exemplars of the testator's handwriting.

## 2. Wills— holographic—surplus language

A holographic will was sufficient to dispose of the testator's property where it included the phrases "bank close" and "to and wife Valerie" written with a different pen, but the remainder was sufficient to express the testator's intentions.

IN RE WILL OF ALLEN

[148 N.C. App. 526 (2002)]

**3. Wills— holographic—instructions**

The trial court did not err in a caveat proceeding by giving the jury an instruction from the Pattern Jury Instructions on holographic wills which was an accurate summary of the law.

**4. Wills— holographic—valuable papers**

A holographic will was found among the testator's valuable papers where the testator was a person of limited means and little formal education, and the will was found in a bowl in his kitchen with a bank document pertaining to funeral insurance, retirement fund documents, a social security check, papers from the Veterans' Administration Hospital, and other medical statements and bills.

Appeal by caveators from judgment entered 3 October 2000 by Judge Jack A. Thompson in Lee County Superior Court. Heard in the Court of Appeals 17 October 2001.

*Love & Love, P.A. by Jimmy L. Love, Sr., for caveators-appellants.*

*Harrington, Ward, Gilleland & Winstead, L.L.P., by Eddie S. Winstead, III, for propounders-appellees.*

BIGGS, Judge.

Mr. Cornelius Allen (Mr. Allen), an elderly widower from Lee County, died on 2 December 1998. He had no living wife or children, and was succeeded by a brother, two sisters, and a nephew (caveators). Upon his death, a handwritten will was found among other papers in a wooden bowl on his kitchen counter.

The will had been witnessed by two of Mr. Allen's friends on 2 January 1991. It bequeathed to one caveator a car, to another his household possessions; left his house to one of the propounders; and divided the contents of a safety deposit box between one of the propounders and one of the caveators. The will also included two phrases, which appeared to be written with a different pen: "bank close" and "to and wife Valerie." Propounders submitted the will for probate on 3 December 1998. Caveators filed a caveat on 23 August 1999, alleging that the will was not a validly executed holographic will. On 2 October 2000 a jury trial was held on the issue of the validity of Mr. Allen's will. Caveators moved for a directed verdict at the close of the propounders's evidence, and again at the close of all the

evidence; their motions were denied. The jury returned a verdict in favor of propounders, finding the will was a valid holographic will. Caveators appeal from the denial of their motions for directed verdict, and from the verdict. Caveators argue that the trial court erred in its denial of their motion for a directed verdict. "A motion for directed verdict tests the sufficiency of the evidence to take the case to the jury." *Lake Mary Ltd. Partnership v. Johnston*, 145 N.C. App. 525, 531, 551 S.E.2d 546, 551, *disc. review denied*, 354 N.C. 363, —— S.E.2d —— (2001) (quoting *Abels v. Renfro Corp.*, 335 N.C. 209, 214-15, 436 S.E.2d 822, 825 (1993)). In ruling on a motion for directed verdict, the trial court applies the following standard:

> Our courts have consistently held that on motion by a defendant for a directed verdict in a jury trial, the court must consider all of the evidence in the light most favorable to the plaintiff, resolving all conflicts in plaintiff's favor and giving plaintiff the benefit of every inference that can reasonably be drawn in plaintiff's favor; that the court may then grant the motion only if, as a matter of law, the evidence is insufficient to justify a verdict for the plaintiff.

*Meacham v. Board of Education*, 59 N.C. App. 381, 383, 297 S.E.2d 192, 194 (1982), *disc. review denied*, 307 N.C. 577, 299 S.E.2d 651 (1983) (citations omitted). Thus,

> the non-movant is given the benefit of all helpful inferences reasonably drawn from the evidence, and all conflicts and contradictions in the evidence are decided in the non-movant's favor. Evidence of the non-movant which raises a mere possibility or conjecture cannot defeat a motion for directed verdict. . . . If, however, non-movant shows more than a scintilla of evidence, the court must deny the motion.

*In re Will of Sechrest*, 140 N.C. App. 464, 468, 537 S.E.2d 511, 515 (2000) (quoting *McFetters v. McFetters*, 98 N.C. App. 187, 191, 390 S.E.2d 348, 350, *disc. review denied*, 327 N.C. 140, 394 S.E.2d 177 (1990)), *disc. review denied*, 353 N.C. 375, 547 S.E.2d 16 (2001) (citations omitted). Further:

> The trial court is required to submit to the jury those issues 'raised by the pleadings and supported by the evidence.' An issue is supported by the evidence when there is substantial evidence, considered in the light most favorable to the non-movant, in support of that issue. 'Substantial evidence is such relevant

**IN RE WILL OF ALLEN**

[148 N.C. App. 526 (2002)]

evidence as a reasonable mind might accept as adequate to support a conclusion.'

*In re Estate of Ferguson*, 135 N.C. App. 102, 105, 518 S.E.2d 796, 798 (1999) (quoting *Johnson v. Massengill*, 280 N.C. 376, 384, 186 S.E.2d 168, 174 (1992)) and (quoting *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980)) (citation omitted). The trial court's ruling on a directed verdict motion is addressed to the court's discretion, and will not be overturned absent an abuse of discretion. *Crist v. Crist*, 145 N.C. App. 418, 550 S.E.2d 260 (2001).

[1] In the instant case, the only issue raised by caveators' motion for directed verdict was the validity of Mr. Allen's will. The motion should be denied if the trial evidence, considered in the light most favorable to propounders, was sufficient to allow a reasonable mind to find that the validity of Mr. Allen's holographic will had been established by the preponderance of the evidence. We therefore review the law governing holographic wills. The three requirements for a valid holographic will are set forth in N.C.G.S. § 31-3.4 (1999), which provides that:

   (a) A holographic will is a will

      (1) Written entirely in the handwriting of the testator but when all the words appearing on a paper in the handwriting of the testator are sufficient to constitute a valid holographic will, the fact that other words or printed matter appear thereon not in the handwriting of the testator, and not affecting the meaning of the words in such handwriting, shall not affect the validity of the will, and

      (2) Subscribed by the testator, or with his name written in or on the will in his own handwriting, and

      (3) Found after the testator's death among his valuable papers or effects, or in a safe-deposit box or other safe place where it was deposited by him or under his authority, or in the possession or custody of some person with whom, or some firm or corporation with which, it was deposited by him or under his authority for safekeeping.

Caveators first argue that their directed verdict motion should have been granted because the evidence presented at trial was insuf-

ficient to meet the statutory requirement that the will be either "written entirely in the handwriting of the testator," or, in the alternative, that if the words not in Mr. Allen's handwriting were disregarded, the remainder would constitute a valid holographic will. Caveators allege that the phrases "bank close" and "to and wife Valerie" were written by someone other than Mr. Allen, and that these words materially alter the meaning of the will, thus invalidating it.

Caveators contend that "[u]ncontradicted expert testimony established that Mr. Allen did not write the entire will[,]" entitling them to directed verdict on this issue. At trial, a handwriting expert testified that the disputed phrases did not appear to be in Mr. Allen's handwriting. However, we are not persuaded by caveators' contention that the authorship of the phrases was conclusively shown by caveators' expert testimony. Several other witnesses testified to their understanding that Mr. Allen added the phrase about "wife Valerie" after the will was initially executed. Moreover, it was not disputed that Mr. Allen died some eight years after writing the main body of the will, and had suffered a stroke before his death. Under these circumstances, Mr. Allen's handwriting may have changed between the original execution of the will and any later additions. We note that the handwriting expert had not examined any other exemplars of Mr. Allen's handwriting.

Generally, the issue of whether a holographic will is entirely in the testator's handwriting is a question for the jury. *In Re Will of Wall*, 216 N.C. 805, 5 S.E.2d 837 (1939) (jury question whether number "5" was written in handwriting of testator); *In Re Will of Penley*, 95 N.C. App. 655, 383 S.E.2d 385 (1989) (question for jury whether codicil to will was in testator's handwriting), *disc. review denied*, 326 N.C. 48, 389 S.E.2d 93 (1990). The issue remains a jury question notwithstanding evidence to the contrary. *In Re Will of Gatling*, 234 N.C. 561, 68 S.E.2d 301 (1951) (caveators offer expert testimony that testator did not write certain words and phrases; jury permitted to decide matter). We conclude that sufficient evidence was presented to submit to the jury the question of whether Mr. Allen wrote each word of the will, and that caveators were not entitled to a directed verdict on this basis.

[2] Caveators argue next that if the evidence raises a doubt regarding the authorship of certain words, then the will must have the same meaning with or without the challenged words. We disagree. The North Carolina Supreme Court has held that:

**IN RE WILL OF ALLEN**

[148 N.C. App. 526 (2002)]

When all the words appearing on a paper in the handwriting of the deceased person are sufficient, as in the instant case, to constitute a last will and testament, the mere fact that other words appear thereon, not in such handwriting, but not essential to the meaning of the words in such handwriting, cannot be held to defeat the intention of the deceased, otherwise clearly expressed, that such paper writing is and shall be his last will and testament.

*In Re Will of Parson*, 207 N.C. 584, 587, 178 S.E. 78, 80 (1935), *(quoting In Re Will of Lowrance*, 199 N.C. 782, 785, 155 S. E. 876, 878 (1930)). Thus, in North Carolina, if the words written by the testator are sufficient to constitute a valid holographic will, then the will is not invalidated by the presence of other words that are not in his handwriting. *Pounds v. Litaker*, 235 N.C. 746, 71 S.E.2d 39 (1952) (presence of surplusage not in handwriting of the deceased does not defeat intention of deceased to execute will); *In Re Will of Wallace*, 227 N.C. 459, 42 S.E.2d 520 (1947) (if handwritten words sufficiently express testator's intent, presence of other words does not invalidate will). If the challenged words are not essential to the will's meaning, they are deemed surplusage. *In Re Will of Lowrance*, 199 N.C. 782, 155 S.E.2d 876 (printed words on letterhead are surplusage). However, the will is invalid if the words that are not in the testator's handwriting are necessary in order to establish a valid holographic will. *Pounds*, 235 N.C. 746, 71 S.E.2d 39 (will cannot be probated where its only "signature" was a monogram not in testator's handwriting); *In Re Will of Smith*, 218 N.C. 161, 10 S.E.2d 676 (1940) (will invalid where words not in testator's handwriting are essential to give other words meaning).

Regarding "bank close," this phrase has no apparent meaning, nor have caveators suggested any. We conclude that this phrase is surplusage, and may be disregarded completely. Regarding the phrase "to and wife Valerie," caveators argue that this phrase effects a material alteration in the will's meaning, by transforming the bequest to Edward Godfrey into a devise to both Edward and Valerie Godfrey as tenants by the entirety. This contention necessarily is premised upon the assumption that the trial court "rewrote" the phrase to read "and to his wife, Valerie," rather than "to and wife Valerie." It is true that "in order to clarify the content of the will, 'the court [may] add, change, or disregard punctuation, phrases, and clauses.' " *Johnson v. Johnson*, 46 N.C. App. 316, 319, 264 S.E.2d 911, 913 (1980) (quoting 1 N. Wiggins, *Willis and Administration of Estates in N.C.* § 133 at

415 (1964)), *disc. review denied,* 300 N.C. 557, 270 S.E.2d 108 (1980); *see also McRorie v. Creswell,* 273 N.C. 615, 160 S.E.2d 681 (1968) (court may disregard grammatical or punctuation errors if necessary to proper construction of will). However, in the case *sub judice,* there is no evidence that the trial court transposed and added words. Nor was the jury instructed to base their deliberations upon the assumption that the phrase had been rewritten.

In the present case, Mr. Allen's holographic will expressed a clear intention to bequeath his house to Edward Godfrey. The phrases which caveators contend may be in someone else's writing does not revoke or alter that intent. Moreover we find it significant that the only person whose inheritance would be affected by the deletion of the words "and to [his] wife Valerie" would be Valerie Godfrey, who has not contested the will.

We conclude that sufficient evidence was presented to submit to the jury the question of the authorship of all parts of the will; and further that if the phrases "bank close" and "to and wife Valerie" are disregarded, the remainder is sufficient to express Mr. Allen's intentions, and to dispose of his property. We further conclude that caveators were not entitled to a directed verdict on the ground that these phrases might have been written by someone other than Mr. Allen. Accordingly, this assignment of error is overruled.

[3] Caveators argue next that the trial court erred in its instructions to the jury. Caveators have not included the jury charge in the record, as required by N.C. R. App. P. 9(f). However, in our discretion, and pursuant to our authority under N.C. R. App. P. 2, we elect to review this issue on its merits.

Caveators object to the following language from the trial court's instructions:

> First, every word of the writing sufficient to constitute a will must be entirely in the handwriting of the deceased. The fact that there are other words which are not in the deceased's handwriting will not render the writing invalid as a will so long as the words which are in his handwriting are sufficient to express his intent to make a will and to dispose of his property. Such other words are surplus.

Caveators argue that the trial court should have instructed the jury to determine specifically whether Mr. Allen wrote "bank close"

and "to and wife Valerie," and then to determine whether those words were essential to the meaning of the will.

The trial court's instruction was taken from the North Carolina Pattern Jury Instructions, N.C.P.I. Civil 860.10. "This Court has recognized that the preferred method of jury instruction is the use of the approved guidelines of the North Carolina Pattern Jury Instructions." *Caudill v. Smith*, 117 N.C. App. 64, 70, 450 S.E.2d 8, 13 (1994), *disc. review denied*, 339 N.C. 610, 454 S.E.2d 247 (1995). Moreover, this pattern jury instruction is an accurate summary of the law. We overrule this assignment of error.

[4] Finally, caveators argue that the will did not meet the requirement of G.S. § 31-3.4 that a testator's holographic will be found "among his valuable papers or effects, or in a safe-deposit box or other safe place."

This Court has held that the statute should be read in the disjunctive, and, thus, that a will is valid if found either in a safe deposit box, or among testator's valuable papers or among testator's valuable effects, or in a safe place. *In Re Will of Church*, 121 N.C. App. 506, 466 S.E.2d 297 (1996) (holding that statutory list should be read disjunctively; will found in purse hanging in closet found to be "in safe place" in meaning of statute); *Stephens v. McPherson*, 88 N.C. App. 251, 362 S.E.2d 826 (1987) (will found in jewelry box in bedroom).

The determination of whether a will is found among valuable papers must be evaluated in the context of what would likely be regarded *by the decedent* as valuable. *In re Westfeldt*, 188 N.C. 702, 125 S.E. 531 (1924). In another case, the Supreme Court of North Carolina held that:

> Valuable papers within the meaning of the statute are such papers as are kept and considered worthy of being taken care of by the particular person, having regard to his condition, business, and habits of preserving papers. They do not necessarily mean the most valuable papers of the decedent even, and are not confined to papers having a money value, or to deeds for land, obligations for the payment of money, or certificates of stock. . . consequently, the sufficiency of the place of deposit to meet the requirement of the statute will depend largely upon the condition and arrangements of the testator.

*In Re Will of Wilson*, 258 N.C. 310, 313, 128 S.E.2d 610, 603-04 (1962) (citation omitted).

In the present case, Mr. Allen's will was found in a bowl in his kitchen. Found in the same bowl were a bank document pertaining to funeral insurance, retirement fund documents, a social security check, papers from the Veterans' Administration Hospital, and other medical statements and bills. The evidence suggested that Mr. Allen was a person of limited means and little formal education. We conclude that in consideration of his apparent style of life, and the nature of the other papers in the bowl, the jury could properly find that the will was found among Mr. Allen's "valuable papers," and accordingly, conclude that the caveators were not entitled to a directed verdict on this ground. This assignment of error is overruled.

For the reasons discussed above, we conclude that the trial court properly submitted the case to the jury, and affirm the court below.

Affirmed.

Judges McGEE and TIMMONS-GOODSON concur.