Action to remove a cloud upon title and to recover land. Judgment for defendant, and plaintiff appealed.
The case was as follows: James Carroll, Sr., died leaving a will in which he devised, among other things, two tracts of land to his son, James A. Carroll. The item of said will by which this devise was made reads as follows: "I give, bequeath, and devise to my son, James A. Carroll, two hundred dollars ($200), to be paid by my executors, and I devise to him the ten acres of land known as the Pearce land, on which he has built a house where he lives. Also, 37 acres which I bought of *Page 370 
Warren Carver, and lying east of the Holly land, both said tracts to said James A. Carroll in fee, but if he die without heirs possessing these lands, or either tract, with remainder to the heirs of J. W. Carroll."
after stating the case: Plaintiffs admit that, about the year 1902 or 1903, and prior to his death, James A. Carroll conveyed such interest as he had in the 37 acres of land, lying east of the Holly land, and that he was never in possession of this land again. The last clause in the above item, by which this 37 acres of land was devised, shows clearly that it was the intention of the grantor for his son, James A. Carroll, to have a fee-simple estate in the land devised to him, to do with and dispose of as he saw fit. This last clause is susceptible of but one meaning. What words could the testator have used to more clearly express his desire than "Both of said tracts to the said James A. Carroll in fee, but if he died without heirs possessing these lands, or either tract, with remainder to the heirs of J. W. Carroll."
It cannot be seriously contended that the testator intended that the heirs of James A. Carroll should be in the possession of the lands at his death. It is true that by inclosing the words "without heirs" in commas, the intent could have been more quickly and surely discovered.
The intention of the testator, as expressed in his will, is not controlled by the punctuation therein, which may be disregarded, where it conflicts with the manifest intention of the testator, and by so doing the meaning of the will is made more obvious. The court may also supplypunctuation for the purpose of clearing up an ambiguity in the will, except in cases where no real ambiguities exist other than that which the punctuation itself creates. 40 Cyc., 1403 (g).
If the testator had desired or intended to convey a life estate only, with remainder over, he would not have inserted the words "or either tract," for certainly, if the devisee had the power to convey one tract, he had the power to convey both.
"When real estate shall have been devised to any person, the same shall be held and construed to be a devise in fee simple, unless such devise shall, in plain and express words, or it shall be plainly intended by the will, or some part thereof, that testator intended to convey an estate of less dignity." Pell's Revisal, sec. 3138; Whitfield v. Garris, 134 N.C. 24.
Having devised an estate in fee, it is said that there was no estate left in testator to dispose of. If one devise in fee simple he cannot make a limitation over by way of executory devise without cutting down the *Page 371 
first fee, in order to make room for the second; for, after giving a fee simple absolutely, there is no part of the estate or interest left in him. So, if one devise in fee, without an express limitation, and give a general power to dispose of the land, he cannot make a limitation over to a third person in case the first taker dies without disposing of the land, or as to such parts as he does not dispose of, for the general power confers the absolute ownership, and leaves nothing in the devisor. This was said byChief Justice Pearson, in McDaniel v. McDaniel, 58 N.C. 353.
"A devise of an estate, generally or indefinitely, with a power of disposition over it carried a fee." Patrick v. Morehead, 85 N.C. 62;Herring v. Williams, 158 N.C. 1.
"Having annexed a condition after devising a fee, the condition is void." Lattimer v. Waddell, 119 N.C. 370.
Where real estate is given absolutely to one person, with a gift over to another of such portion as may remain undisposed of by the first taker at his death, the gift over is void, as repugnant to the absolute property first given; and it is also established law that where an estate is given to a person generally or indefinitely with a power of disposition, or to him, his heirs and assigns forever, it carries a fee, and any limitationover or qualifying expression of less import is void for repugnancy. The only exception to such a rule is where the testator gives to the first taker an estate for life only, by certain and express terms, and annexes to it the power of disposition. In that particular and special case the devisee for life will not take an estate in fee, notwithstanding the naked gift of a power of disposition. Schouler on Wills, Executors and Administrators, pp. 703, 594, in which is cited Mulvane v. Rudd,146 Ind. 482 and 483 (45 N.E. 659), and others.
Where the words of the will were, "But should she die without issue and leave any property at her death given by this will," then over, it was held that an implied power was given, and that the devisee acquired a fee in the property. Gallaway v. Durham (Ky., 1904), 81 S.W. 659. Cited in Notes, vol. 30, A. and E. Encyclopedia of Law, p. 737.
An inspection of the entire will shows the intention of the testator to make an equal division among his children of all his property, devising his lands to them in fee, and in only one other instance does he attempt to suggest what shall be done with the land after the death of the devisee, and this suggestion is likewise based on her ownership thereof at her death; but in both these instances the devise is in fee, unconditional.
"In construing a will, where there is doubt or ambiguity, the true intent and meaning of the testator should be gathered from the entire instrument, in accordance with the rules of law established for the purpose. . . . The first taker in a will is presumably the favorite of the testator, and in doubtful cases the gift is to be construed so as to *Page 372 
make it as effectual to him as the language of the will, by reasonable construction, will warrant. . . . The law favors the early vesting of estates, to the end that property may be kept in the channels of commerce. Hence, a future or executory limitation under a devise in a will will not be construed as contingent, when construing the will as a whole, it appears that the intent of the testator was that it should be deemed as vested."Dunn v. Hines, 164 N.C. 113.
In the fifth item of the will testator devises 77 acres of land to his daughter, Maria Purvis, and provides further: "Also one-fourth of the residue of my estate, and the other three-fourths to be divided equally between Aurelia, John Wesley, and James A. Carroll," further clearly showing that it was his intent and desire to make an exactly equal division of all his property among his children, or as nearly as it could be done.
The law, also, if possible, adopts the just, natural, and reasonable rule of an equal distribution among children (40 Cyc., 1411), and if words are used in one part of a will in a certain sense, the same meaning is to be given them when repeated in other parts of the will, unless a contrary intent appears. It is a well settled rule of testamentary construction that if it is apparent that in one use of a word or phrase a particular significance is attached thereto by the testator, the same meaning will be presumed to be intended in all other instances of the use by him of the same word or phrase. Taylor v. Taylor, 174 N.C. 537.
The above principles are stated as illustrating the trend of what this court, and others, have said upon subjects somewhat related to the question we have in hand, and not as approving all that has been thus said in that regard. Though technical doctrines have weight with us in some cases, they will not be allowed to defeat the evident intention of the testator in construing his will.
The primary object in interpreting all wills is to ascertain what testator desired to be done with his estate, and if it can be found in the language of the document, his intention always controls.
It has been said that the cardinal rule of interpretation is that we should seek first and throughout for the testator's intention, as expressed in his will, and in doing so any obscurity or doubt as to the meaning may be cleared up by giving words their primary or ordinary signification, and so moulding the language by repeating, supplying, transferring, or substituting words and sentences, and so arranging them in a reasonable manner and with proper punctuation as will more clearly disclose the true intent and meaning. 40 Cyc., 1386-1405. It will appear, at the pages of the Cyclopedia of Law just noted, that the following may be adopted as a guide to a correct interpretation. The cardinal rule in the construction and interpretation of wills or codicils is that the intention *Page 373 
of the testator must be ascertained, if possible, and, if it is not in contravention of some established rule of law or public policy, must be given effect, and by this is meant the actual, personal, individual intention, and not a mere presumptive intention inferred from the use of a set phrase or a familiar form of words. For this purpose the will should be construed liberally; but it cannot be construed so as to effectuate an intention which is contrary to some rule of law or public policy. The intention which controls in the construction of a will is that which is manifest, either expressly or by necessary implication, from the language of the will, as viewed, in case of ambiguity, in the light of the situation of the testator and the circumstances surrounding him at the time it was executed, although technical words are not used; or, as is sometimes said, the testator's intention must be ascertained from the four corners of the will. Hence, a will cannot be construed by a mere conjecture as to the intention of the testator; but it is the intention which the testator expressed in his will that controls, and not that which he may have had in his mind, or which he manifested by some other paper not a part of the will, or by previous declarations. Where the will affords no satisfactory clue to the real intention of the testator, technical rules for the construction of wills are to be followed so far as they aid in determining that intention, but any technical rule, if they would tend to defeat such intention, must yield to a practical construction of the will. The principle applies to cases where there is an intention exhibited to make a certain disposition of the property, but the mode of executing the intention is erroneously, defectively, or illegally prescribed in the will.Pickering v. Langdon, 22 Me. 413; Graham v. Graham, W. Va., 36. Expressions of doubtful or uncertain meaning or equivocal language cannot defeat a general intent clearly expressed in the will. Barrett v. Marsh,126 Mass. 213; Behrens v. Baumann, 66 W. Va. 56. These passages substantially taken from Cyc. are in accord with our own decisions, and it is, therefore, not necessary that we should enumerate them here, as they are cited in the note to the text.
When we consider the simple rules above set forth, and keep them steadily in mind, we find no difficulty whatever in correctly discerning and comprehending the meaning, and the intention of the testator, as expressed in the will now under consideration. He devises the ten acres, known as the Pearce land, to his son, James A. Carroll, and also the thirty-seven acres, in fee, "but if he die without heirs possessing these lands, or either tract, with remainder to the heirs of J. W. Carroll." If properly punctuated, as he designed it should be, and as correct form suggests, the meaning of this clause is clear beyond dispute. It may be rendered into unobscure English in several ways. The first and most simple is by the slightest punctuation, when it will read thus: "I *Page 374 
devise to my son James A. Carroll, the said tract of land in fee, but if he die, without heirs, possessing said land, or either of the tracts, remainder to the heirs of J. W. Carroll." Another way: "I devise to my son James A. Carroll the said tract of land in fee, but if he die possessed of them, or either of them, and without heirs, then over to my son J. W. Carroll." Or still another, which would express the limitation over in this way, after devising the tracts of land in fee to James A. Carroll: "But if he die without heirs and possessed of (or, in other words, owner of) said tracts of land, then over to my son J. W. Carroll." This clause was framed, as we find it in the will, for the evident purpose of relieving his son, James A. Carroll, from any restraint of alienation, and leaving him free to convey the land during his life, so as to render it of more value to him. He could keep it and cultivate it, or otherwise use it for his own profit, or he could sell it and give a good and indisputable title to the purchaser, and take the proceeds of the sale, or keep the land itself, as he saw fit, or otherwise as he might choose in order to advance his own interest. This is perfectly clear upon the face of the will alone, but the very expression "possessing these tracts of land, or either of them," is plainly indicative of this purpose. It meant, if he sold and conveyed, not only both of them, but either of them, as to both, or as to the one sold, the title should be good in the purchaser, but as to the other, that is, the one not conveyed, it should go, at James' death without issue, to J. W. Carroll. Nothing, it seems to us, could be more fuller and clearer indicated than this intention of the testator by the language of his will. The words "possessing these lands" were certainly not intended to qualify, or to stand connected, with the expression "without heirs," so as to read "without heirs possessing these lands," for we cannot see how James A. Carroll's heirs could have been in possession, in their own right, of the land at his death.
It is obvious to us that the meaning of the will must be what we have stated that it is, and that it can only have that meaning.
Mr. A. M. Moore submitted an exceedingly valuable brief, reinforced by a strong oral argument in support of his position, and the case was equally well argued by Mr. Nimocks, but after hearing and considering all that is in the record, and enlightened as we have been by the fine discussion of the question involved, we conclude that the judge decided the case correctly, when he nonsuited the plaintiff.
Affirmed. *Page 375