IN RE WILL OF W. J. WATSON.

(Filed 23 March, 1938.)

**1. Wills § 13—Methods by which wills may be revoked.**

A will may be revoked by any of the acts enumerated in C. S., 4133, performed by testator or by some other person in his presence and by his direction and consent, indicating an intention to revoke same, or by proper execution of a subsequent will or other writing, or by the subsequent marriage of the testator, C. S., 4134, but a will may not be revoked by verbal declarations and it is expressly provided by statute that a will may not be revoked by any presumption of an intention to revoke on the ground of an alteration in circumstances, C. S., 4135.

**2. Same—Tripartite will held not revoked by subsequent revocation by marriage of wills of other parties to the agreement.**

Three single brothers, owning personalty and realty in common, each executed a will leaving all his interest in his property, real and personal, in fee and in common, to his brothers or the survivor of them. Caveators offered evidence that thereafter two of the brothers married, resulting in the revocation of their wills, that after the marriage of the brothers the personalty and the income from their business was equally divided among them, that the brothers agreed to partition the lands and mutually agreed to release each other from the obligations and conditions which entered into their agreement to make reciprocal wills, and contended that therefore the will of the unmarried brother, offered for probate, was revoked.

*Held:* The exclusion of the evidence offered by caveators was not error, since such evidence would at most establish testator's right to cancel his will at his option, without facts from which the exercise of this option can be inferred, a will not being revocable by verbal declarations and it being expressly provided by statute that a will may not be revoked by presumption arising from change of circumstances.  C. S., 4135.

APPEAL by caveators from *Williams, J.*, at October Term, 1937, of WILSON.  No error.

*Wiley C. Glover and Finch, Rand & Finch for caveators, appellants.*
*W. A. Lucas and O. P. Dickinson for propounders, appellees.*

SCHENCK, J.  The caveators, B. A. Sasser, Mrs. Ava Sasser Moore, Howard Simpson, L. A. Simpson, W. M. Simpson, Mrs. Mattie Simpson Bunn, Mrs. Addie Simpson Boykin, Mrs. Bettie Simpson Hamilton, and Mrs. Bessie Simpson Bunn, are nieces and nephews of W. J. Watson, deceased, being children of his sisters, who predeceased him; the propounders, John D. Watson and James G. Watson, are brothers of the said W. J. Watson, deceased; and the caveators and propounders are all of the heirs at law and next of kin of said W. J. Watson, deceased.

W. J. Watson died on 10 December, 1936, and on 26 January, 1937, John D. Watson and James G. Watson filed with the clerk and procured the probate thereof in common form, and the issuance of letters testamentary to them thereon, a paper writing in words and figures as follows:

"North Carolina—Wilson County.

"Know all men by these presents that I, W. J. Watson, being of lawful age and sound mind and memory, do make, publish, and declare this instrument to be my will and testament, hereby revoking all former wills.

"Whereas the undersigned, together with his two brothers, John D. Watson and James G. Watson, are the owners as copartners and tenants in common of equal interest of all the property—real, personal and mixed—which we have already acquired and will be copartners and tenants in common of equal interest of all the property—real, personal, and mixed—which we may acquire in unchanged continuance of our operations and in like capacity; and

"Whereas the undersigned and his two said brothers, John D. Watson and James G. Watson, because of the conditions under which this property has been acquired, and is being acquired, have agreed together this day to execute tripartite wills (each executing a separate will of like intent to this), making each other sole devisees and legatees.

In re Will of Watson.

"Now, in the execution of this mutual agreement, and as his one of the tripartite wills made in pursuance thereof, I, W. J. Watson, on .... September, 1927, do make and declare this to be my will and testament, viz:

"Item 1. All of my just debts and funeral expenses shall be at all times fully paid by my executors hereinafter named.

"Item 2. I do hereby give, devise and bequeath to my two brothers, John D. Watson and James G. Watson, and to the survivor of either, as hereinafter set out, all and singular my interest, whether sole seized and possessed, or seized and possessed jointly and as tenants in common, in all the lands, tenements, properties, farm equipment, livestock, notes, bonds, moneys, mortgages, bills receivable, accounts, and real and personal property of every description, of which I may die seized and possessed, wheresoever situate and whether acquired at the date hereof or subsequent thereto; but it is expressly declared and provided, and I do declare the same to be my will, and this to be a part of the above bequest and devise, that, if either of my two said brothers shall predecease me, then all the property herein bequeathed and devised shall pass to the survivor absolutely and in fee; and, if both my said brothers shall predecease me, then the agreement, under which the tripartite wills are executed, shall cease and determine, and I shall be at liberty to make such disposition of all the property, howsoever and whensoever acquired, as I shall see fit.

"Item 3. I do hereby constitute and appoint my two said brothers, John D. Watson and James G. Watson, my lawful executors, to all intents and purposes, to execute this my last will and testament according to the true intent and meaning of the same, and every part and clause of the same.

"In witness whereof I, the said W. J. Watson, do hereunto set my hand and seal, 6 September, 1927.

W. J. WATSON. (Seal)

"Signed, sealed, published and declared by the said W. J. Watson to be his last will and testament, in the presence of us, who, at his request and in his presence, and in the presence of each other, do subscribe our names as witnesses thereto.

JOHN F. BRUTON
W. E. WARREN."

The propounders offered in evidence the testimony of the subscribing witnesses to the paper writing propounded to the effect that W. J. Watson executed the same as his last will and testament in their presence, and that they in his presence and in the presence of each other

signed the same, at his request, as witnesses, and that in their opinion the said W. J. Watson had sufficient mental capacity to know what he was doing at the time.

The caveators alleged and offered evidence tending to show the following facts:

That James G. Watson married in February, 1935, and thereby revoked his tripartite will; that John D. Watson married in October, 1935, and thereby revoked his tripartite will; that W. J. Watson, John D. Watson, and James G. Watson were, on 6 September, 1927, the date the tripartite wills were executed, the owners as copartners and as tenants in common of equal interest of real, personal, and mixed property, and contemplated a continuance of said relationship; that upon the marriage of James G. Watson, the three brothers mutually agreed to release each other from the obligations and conditions which entered into their agreement to make reciprocal wills, and that since the marriage of James G. Watson on 26 February, 1935, the proceeds from the operation of the farms have been divided among the brothers, one-third to each; that after the marriage in October, 1935, of John D. Watson, it was mutually agreed among the makers of the tripartite wills that the real estate of the brothers would be partitioned by 1 January, 1937; that after the marriage of the two brothers W. J. Watson was required to pay board to them, which he had not done before said marriages, and after said marriages of the two brothers their moneys and investments were divided among the three; that W. J. Watson, John D. Watson, and James G. Watson have stated that the agreement and the wills had been revoked and destroyed and each had released the other from all conditions and obligations in respect thereto.

The evidence tending to prove the allegations of facts contained in the caveat was, upon objection by the propounders, excluded by the court, and caveators reserved exception.

The issue was answered in favor of the propounders, and from judgment that the paper writing propounded is the last will and testament of W. J. Watson, deceased, the caveators appealed, assigning error.

The sole question presented for determination is whether the evidence tendered by the caveators to sustain their allegations of facts, excluded by the court, tended to prove a revocation or cancellation of the paper writing propounded as the last will and testament of W. J. Watson.

C. S., 4133, reads: "No will or testament in writing, or any clause thereof, shall be revocable otherwise than by some other will or codicil in writing, or other writing declaring the same, or by burning, canceling, tearing, or obliterating the same, by the testator himself, or in his presence and by his direction and consent; but all wills or testaments shall

In re Will of Watson.

remain and continue in force until the same be burnt, canceled, torn, or obliterated by the testator, or in his presence and by his consent and direction; or unless the same be altered or revoked by some other will or codicil in writing, or other writing of the testator, signed by him, or some other person in his presence at least; or unless the same be altered or revoked by some other will or codicil in writing, or other writing of the testator, all of which shall be in the handwriting of the testator and his name subscribed thereto or inserted therein, and lodged by him with some person for safe-keeping, or left by him in some secure place, or among his valuable papers and effects, every part of which will or codicil, or other writing shall be proved to be in the handwriting of the testator by three witnesses at least." There is no allegation in the caveat, or evidence, offered tending to prove that the paper writing offered for probate was revoked by any of the means prescribed by the statute.

The method of revocation other than those mentioned in the statute just quoted is "by subsequent marriage of the maker," provided by C. S., 4134. Under this provision the other two of the tripartite wills may have been revoked by the marriage of the makers thereof, and while such revocations may have relieved W. J. Watson of any obligation to continue his will in effect, it only gave him the option of revoking it and did not *ipso facto* revoke it.

While the division of the personal property and the agreement to divide the real estate held by the makers of the tripartite wills as partners and tenants in common, as alleged in the caveat, may have brought about a change in the relationship existing among W. J. Watson and his brothers, C. S., 4135 provides that "no will shall be revoked by any presumption of an intention on the ground of an alteration in circumstances."

The alleged fact that W. J. Watson and John D. Watson and James G. Watson all stated that the tripartite wills had been revoked and destroyed and that each had released the other from all obligations in respect thereto, if proven, would not have brought the will offered for probate within any of the methods of revocation or cancellation provided by the statute (C. S., 4133). A written will duly and truly prepared and executed cannot be revoked or canceled by verbal declarations.

There are no allegations of facts in the caveat, which, if proven by evidence, would have constituted a revocation or cancellation of the will of W. J. Watson, duly executed by him on 6 September, 1927. The most these alleged facts establish is a release from any obligation upon the part of W. J. Watson to have continued in effect such will, thereby giving to him the option to cancel or revoke the will duly made by him,

but there is no allegation of any facts from which an exercise of this option can be inferred.

In the exclusion of the evidence tending to prove the allegations of facts contained in the caveat, to which the only exceptive assignment of error is directed, we find

No error.