ROBERT M. OLIVE, SR., INDIVIDUALLY AND AS EXECUTOR OF THE ESTATE OF RUTH SEDBERRY OLIVE, DECEASED v. GEORGE BIGGS; CHRISTINE BIGGS; RUTH OLIVE NEITMAN; CLARENCE SEDBERRY OLIVE; JEAN McKAY OLIVE TOLAR, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF ROBERT M. OLIVE, JR., DECEASED; ANN M. OLIVE; CARRIE BLACKMAN SIMMONS; MYRA OLIVE; LOWNEY OLIVE; IULA OLIVE AND ROBERT M. OLIVE, III; TERRY DEE OLIVE; HUNTER OLIVE; THERESA OLIVE; WINSTON OLIVE; CARLA NEITMAN; ROBIN NEITMAN; RENEE NEITMAN; DEBRA NEITMAN; KAY OLIVE AND NANCY OLIVE, MINORS

No. 31

(Filed 15 April 1970)

**1. Wills § 1— joint will — definition**

A joint will is in effect the separate will of each person signing it as testator.

**2. Wills § 8— joint will — revocation**

Nothing else appearing, either signer of a joint will may revoke it, in any manner permitted by statute, during the life of all of the persons signing it as testators.

**3. Wills § 8— joint will — revocation by surviving signer**

Nothing else appearing, though one of the signers of a joint will has died and the document has been probated as his or her will, the surviving signer may revoke it and, in that event, it cannot be probated as the will of such survivor.

**4. Wills § 8— revocation of joint will — contract not to revoke — breach — rights of devisees**

Even where there is a contract between the testators not to revoke the joint will, the better view is that the revocation by the survivor is ef-

fective to prevent the probate of the instrument as the will of the sur-
vivor, leaving the disappointed legatees or devisees under the joint will
to their rights, if any, for breach of the contract as beneficiaries thereof.

**5. Wills § 8— joint will of spouses — revocation by surviving spouse**

A joint will executed by the husband and wife is revocable by the sur-
viving husband and does not impair his right to convey properties owned
by him, notwithstanding the will was also executed by the deceased wife
and has been probated as her will.

**6. Wills § 34; Husband and Wife § 17— wife's will — effect on
property owned by the entireties**

A wife's will cannot devise to the husband property which at the time
of her death was already owned by the husband alone or was owned by
the husband and wife as tenants by the entireties, nor could her will,
nothing else appearing, limit the husband's right to convey such properties
after her death.

**7. Husband and Wife §§ 15, 17— estate by entireties — incidents —
effect of deceased spouse's will**

Land owned by a husband and wife as tenants by the entireties is not
owned by them in shares, but by the two considered as a separate legal
being; consequently, no interest in such property passes under the will
of the first to die.

**8. Wills § 30; Husband and Wife § 17— construction of joint will
— disposition of entireties property — assumptions**

In an action to construe a joint will executed by a husband and wife
with the assistance of an attorney, it is reasonable to assume that the
husband and wife were aware that property owned by them by the en-
tireties would pass to the surviving spouse by virtue of survivorship and
not under the will; and consequently it is reasonable to assume that they
did not intend the provisions of the will relating to entireties property to
be given effect as parts of the will of the first to die, but intended these
provisions to become effective only as parts of the will of the survivor.

**9. Wills § 64— devise of property belonging to beneficiary — benefic-
iary put to election**

Where the devisor purports to devise property which belongs to the
beneficiary, giving it to another, and also devises property of his own to
the beneficiary, such beneficiary must make a choice between retaining
his own property, which has been given to another, or taking the property
which has been given him under the terms of the will.

**10. Wills § 64— election — intent of testator**

The doctrine of election does not apply unless the intent of the testator
to put the beneficiary to an election clearly appears from the terms of the
will.

**11. Wills § 64— construction of joint will executed by husband and
wife — doctrine of election**

In a husband's action seeking construction of a joint will executed by

himself and his wife, now deceased, the doctrine of election *is held* in-applicable, and consequently the husband's acceptance of the devise to him under the wife's will did not deprive him of title to or of the right to convey land which, at the time of the wife's death, was owned by him alone or was owned by them as tenants by the entireties.

**12. Wills § 28— joint will executed by spouses — death of wife — construction of will**

A joint will executed by a husband and wife must be construed as if it were the will of the deceased wife alone to determine what title the husband took thereunder to those properties which the wife alone owned at the time of her death.

**13. Wills § 28— term "in fee simple" — construction**

The technical term "in fee simple" is to be given its technical meaning in the absence of a clear expression of a contrary intention in the will itself.

**14. Wills § 73— action to construe joint will of spouses — devise to surviving spouse — disposition to children**

In an action by a husband seeking construction of a will executed jointly by himself and his wife, now deceased, wherein Item Two of the will devised and bequeathed "all of his or her property, unconditionally and in fee simple, to the survivor, in the event that one of us survives the other," and Items Three through Twelve attempted to devise certain of the wife's properties to their children either outright or "upon the death of the survivor" or "at the time of our death," it is apparent that the wife intended that, if her husband survived her, all of her property was to pass to him in fee simple, and at his death was to pass to the children as specified in the remaining Items; consequently, the will *is held* a devise to the husband in fee simple of all the wife's property, with no limitation upon his right to convey the same.

**15. Wills § 28— construction of a will — intent of testator**

The cardinal principle in the construction of a will is to give effect to the intent of the testator as it appears from the language used in the instrument itself, insofar as that can be done within the limits of the statutes or by decisions of the court.

**16. Wills § 28— intent of testator — determined from entire instrument**

The intent of the testator is determined from the entire instrument so as to harmonize, if possible, provisions which would otherwise be inconsistent.

**17. Frauds, Statute of § 7; Wills § 2— contract not to revoke joint will — sufficient memorandum**

A joint will executed by a husband and wife may itself be a sufficient memorandum of a contract between the two that the survivor will not revoke the document as his or her own will.

**18. Wills § 2— contract to make joint will — breach — equitable relief**

Where a husband and wife enter into a contract to make a joint will

or separate wills, whereby each devises his or her property to the survivor of them and the survivor devises his or her property to others, according to a specified plan of distribution, and one spouse dies without revoking his will, the survivor, accepting the benefits of the will, is bound by the contract; his subsequent revocation of the will is a breach of such contract for which a court of equity will fasten a trust, in favor of the beneficiaries named in the will, upon the properties which the survivor so contracted to devise.

**19. Wills § 2— contract to make joint will — sufficiency of terms**

Language in a joint will executed by a husband and wife, that they, "in consideration of each making this our Last Will and Testament, do hereby make, publish and declare this instrument to be jointly as well as severally our Last Will and Testament," *held* sufficient, in conjunction with the reciprocal devises and bequests, to show the existence of a contract between the husband and wife to execute the joint will.

**20. Wills §§ 2, 73— action to construe joint will — evidence of the contract to make the will — harmless error**

In an action by a husband seeking construction of a joint will executed between himself and his deceased wife, a purported beneficiary under the wife's will was not prejudiced by the testimony of the attorney who prepared the will that he knew of no agreement between the spouses, other than what was in the will, with respect to the execution of the joint will, where the will itself contained clear evidence of the agreement.

**21. Husband and Wife § 4— contract to make a will — acknowledgment by wife**

A contract between husband and wife prescribing the testamentary disposition of their properties is not binding upon the wife unless the contract is acknowledged by her in conformity with G.S. 52-6(a).

**22. Wills § 2— contract to make will — void promise on one side — subsequent performance of promise**

When the wife is not bound by a contract executed between herself and her husband for the testamentary disposition of their properties, neither is the husband bound; but when the wife dies, leaving a will in accordance with the contract, the husband thereby becomes bound by his contract to make the agreed testamentary disposition of his own property.

**23. Contracts §§ 4, 21— void promise — subsequent performance — consideration**

While a promise void for incapacity of the promisor will not support a counter-promise, if the void promise is actually performed, the performance may become sufficient consideration to support the counter-promise.

**24. Wills § 2— contract for testamentary disposition of property — construction**

Each contract for the testamentary disposition of property must be construed to determine the intent of the parties thereto with reference to the right of the owner of the property to make an *inter vivos* conveyance.

25. **Wills §§· 2, 68— contract between spouses to make joint will — construction — rights of surviving spouse**

Where husband and wife, pursuant to a contract, executed a joint will providing for the testamentary disposition of their properties, and the wife thereafter dies without revoking her will, the husband may not make a testamentary disposition of any property contrary to the contract, or revoke the joint will as his will, or make an *inter vivos* conveyance or transfer of any property which will prevent a court of equity from subjecting the property, so transferred in breach of the contract, to the rights of the beneficiaries thereof prior to the acquisition of such property by a bona fide purchaser for value.

26. **Wills §§ 2, 73— contract between spouses to make joint will — construction — right of surviving spouse to make inter vivos conveyance**

In a joint will executed by a husband and wife pursuant to a contract, the will devised to a named devisee the house and furnishings at 209C Olive Court "if, at the time of our death we still own the house and property on East Mountain Drive; but if, at the time of our death we do not own the said property on East Mountain Drive" then the house and furnishings at 209C Olive Court shall vest in another name devisee. *Held:* The will clearly contemplated that the property on East Mountain Drive might not be owned by the surviving testator at his death, and the surviving testator therefore had the power to make an *inter vivos* conveyance of the property during his lifetime.

HIGGINS, J., dissenting.

BOBBITT, C.J., joins in dissenting opinion.

ON certiorari to the Court of Appeals to review its decision reported in 6 N.C. App. 265, 170 S.E. 2d 181.

On 25 February 1965, Dr. Robert M. Olive and Ruth Sedberry Olive, his wife, jointly executed a document which has been admitted to probate in Cumberland County as her will. At her death, on 29 September 1965, she was the sole owner in fee simple of certain real property, he was the sole owner in fee simple of other real property and they owned still other real property in fee simple as tenants by the entireties.

Dr. Olive is the executor of his wife's estate and a devisee under the will. He instituted this action for a declaratory judgment construing the will so as to determine: (1) What interest he takes under the will in the properties owned by Mrs. Olive at the time of her death; (2) whether he may take such interest in those properties under the will and also take in fee simple the properties held by him and his wife as tenants by the entireties; (3) whether, if he be not the unconditional owner in fee simple of the properties owned at her death by Mrs. Olive, he may, by a sale thereof, revoke the will as to him; (4) whether, if he be the owner in fee simple of all the properties owned at the time of Mrs. Olive's death by her only, by him

only and by them as tenants by the entireties, he may revoke the will as to himself and convey a good and marketable title thereto; and (5) whether he is barred by the doctrine of election from taking under the will and making a disposition of the properties other than that specified in the will.

The provisions of the will pertinent to the determination of these questions are:

"We, Robert M. Olive, Sr., and Ruth Sedberry Olive, husband and wife, * * * in consideration of each making this OUR LAST WILL AND TESTAMENT, do hereby MAKE, PUBLISH and DECLARE this instrument to be jointly as well as severally OUR LAST WILL AND TESTAMENT.
                    *        *        *

### TWO:

"We, and each of us, devise and bequeath all of his or her property, unconditionally and in fee simple, to the survivor, in the event that one of us survives the other.

### THREE:

"Upon the death of the survivor, *or in the event that our death is simultaneous,* we do hereby give and devise our home place, at No. 126 Dobbin Avenue, in the City of Fayetteville, to our sons ROBERT M. OLIVE, JR., and CLARENCE S. OLIVE, and our daughter, RUTH OLIVE NEITMAN. [Emphasis other than capitalization added.]

### FOUR:

"We give and devise, in fee simple, to our son, ROBERT M. OLIVE, JR., the white brick and weatherboard constructed house at No. 209 A DeVane Street, in the City of Fayetteville, including the household and kitchen furniture therein.

### FIVE:

"We give, devise and bequeath, in fee simple, subject to the conditions hereinafter set out, to our daughter, RUTH O. NEITMAN, our following described property:

"1. The two store [sic] brick dwelling at No. 209 DeVane Street, * * *

"2. The brick dwelling and the furniture and furnishings therein, at 209 B on Olive Court * * *

"3. The brick dwelling, and the furniture and furnishings therein, at 209 C on Olive Court * * * *if, at the time of our death we still own the house and property on East Mountain Drive, but if, at the time of our death we do not own the said property on East Mountain Drive,* then the brick dwelling, and the furniture and furnishings therein, at 209 C on Olive Court, shall vest in ROBERT M. OLIVE, JR., as set out in Article SIX of this will. [Emphasis other than capitalization added.]

"4. The house and lot on Grove Street, the two houses and lots on Bell Street, and one vacant lot on New York Street, all in the City of Fayetteville.

"All of the foregoing described property is devised and bequeathed to our daughter, RUTH O. NEITMAN, subject to the condition and provision that no part thereof may be sold or mortgaged without the consent, in writing, of ALEXANDER E. COOK and LACY S. COLLIER, Fayetteville, North Carolina, or the survivor.

"In the event, however, that either ALEXANDER E. COOK or LACY S. COLLIER *be not living at the time of the death of the survivor of us,* * * * we hereby appoint JAMES R. NANCE of Fayetteville, North Carolina, in the place of that one, to serve in this capacity. [Emphasis other than capitalization added.]

### SIX:

"We give, devise and bequeath to our son, ROBERT M. OLIVE, JR., our country place located on East Mountain Drive in Pearce's Mill Township, about six miles south of Fayetteville, * * *

"In the event, however, that *at the time of our death* we do not own said property, then we give and devise to our son, ROBERT M. OLIVE, JR., the brick building at 209 C on Olive Court leading from DeVane Street eastwardly, in the City of Fayetteville. [Emphasis other than capitalization added.]

### SEVEN:

"We give and devise and bequeath to our son, CLARENCE S. OLIVE, the brick dwelling house, and the furniture and furnishings therein, at No. 209 D Olive Court in the City of Fayetteville.

* * *

### TWELVE:

"All the rest and residue of our estate, meaning thereby all of our property of any sort, kind and description, both real and personal, * * * we will, devise and bequeath, *after the death of the survivor,* to our three children, ROBERT M. OLIVE, JR., CLARENCE S. OLIVE and RUTH O. NEITMAN, share and share alike. [Emphasis other than capitalization added.]

### THIRTEEN:

"We, and each of us, do hereby appoint the survivor of the two as executor or executrix of this OUR LAST WILL AND TESTAMENT; however, *after the death of the survivor* of the two, we and each of us do hereby constitute and appoint ALEXANDER E. COOK and LACY S. COLLIER as Executors of this, OUR LAST WILL AND TESTAMENT, * * * [Emphasis other than capitalization added.]

"IN THE EVENT, HOWEVER, that either ALEXANDER E. COOK or LACY S. COLLIER be not living *at the time of the death of the survivor of us,* * * * we hereby appoint JAMES R. NANCE of Fayetteville, as co-Executor, to act in conjunction with the remaining one, with all the duties, power and authority herein given to the originally named Executors. [Emphasis other than capitalization added.]

The defendants, with the exception of George Biggs and Christine Biggs, are all who claim as legatees or devisees under the will, the minors among them being represented by duly appointed guardians ad litem. The defendants Biggs contracted with the plaintiff, after the death of Ruth Sedberry Olive, to purchase from him the land described in Item Six of the will, part of which was the sole property of Ruth Sedberry Olive at her death and part of which was then owned by Ruth Sedberry Olive and Dr. Olive as tenants by the entireties, but have refused to do so because of doubt as to his ability to convey a good title in fee simple thereto.

The defendant Jean McKay Olive Tolar is the widow and devisee of all the property of Robert M. Olive, Jr., who died testate after the death of Ruth Sedberry Olive. She filed answer alleging that the plaintiff contracted with Ruth Sedberry Olive to make a joint, mutual, reciprocal will which would control the disposition of all property owned by them individually and as tenants by the entireties, that they did execute such will and the plaintiff is estopped to deny its validity. She prays that the action be dismissed and, if

not, that she be adjudged the beneficiary of all bequests and devises made to Robert M. Olive, Jr., by the joint will.

Evidence for the plaintiff included his inventory and annual account as executor of the estate of Ruth Sedberry Olive, and the testimony of Alexander Cook, the attorney who drafted the will. Over objection, he testified that he had no knowledge of any agreement, apart from what appears upon the will itself, between Dr. Olive and Ruth Sedberry Olive respecting the execution of the will or of any agreement, apart from the will, between them to the effect that it could not be changed by either without the consent of the other.

The defendants' evidence consisted of the testimony to the effect that rent collected since the death of Mrs. Olive from tenants of the property on Grove Street, referred to in Item Five of the will, of which Mrs. Olive was the sole owner at her death, was paid over to and deposited in the bank account of Dr. Olive whose bills have been paid from that account. Such rent has been reported for income tax purposes as his income.

The superior court entered judgment containing the following findings of fact, conclusions of law and adjudications:

### FINDINGS OF FACT

\* \* \*

"3. That Ruth Sedberry Olive and Robert M. Olive, Sr., executed jointly on February 25, 1965, a Last Will and Testament of said date, a true copy of which is appended to a complaint as Exhibit 'A'; that said will was admitted to probate in common form in the Office of the Clerk of Cumberland County, North Carolina, as the Last Will and Testament of Ruth Sedberry Olive and that Letters Testamentary qualifying and appointing the plaintiff as executor were issued on October 20th, 1965, and that such letters are still in effect; that no final accounting has been filed in said estate.

\* \* \*

"10. That there was no contract, apart from the joint will of February 25th, 1965, which was executed by the plaintiff and his decedent wife, Ruth Sedberry Olive, respecting the execution of the aforesaid joint will, nor any contract between such parties that the aforesaid joint will of February 25th, 1965, could not be changed by one without the consent of the other, or any such contract that the aforesaid joint will of February

25th, 1965, was to be the only will of the plaintiff and his decedent wife, Ruth Sedberry Olive.

"11. That the plaintiff has received the rents from the properties of his decedent wife at 803 Grove Street and 732 Bell Street, Fayetteville, North Carolina, approximately $1,800.00 since the death of Ruth Sedberry Olive, and has received the sums called for by Exhibit 'D'; * * * that the estate of Ruth Sedberry Olive is indebted to the plaintiff in the sum of $3,881.41; that all such rents and funds were deposited to the plaintiff's bank account from which his personal expenses were paid, but the plaintiff had other sources of income adequate to maintain him properly and maintains a balance in his account in excess of any sums received from such rents and from the defendants, Biggs.

\* \* \*

## CONCLUSIONS OF LAW

"1. That the joint will of February 25th, 1965, executed by the plaintiff and his decedent wife, Ruth Sedberry Olive, does not contain nor comprise a contract between the parties to enter into such joint will nor does same constitute or comprise an agreement between the plaintiff and his decedent wife that said joint will would remain in effect until the death of the survivor.

"2. That the plaintiff, Robert M. Olive, Sr., acquired a fee simple absolute estate in all the properties of his decedent wife, Ruth Sedberry Olive, under the joint will of February 25th, 1965.

\* \* \*

"4. That the properties owned by plaintiff and his decedent wife, Ruth Sedberry Olive, in an estate by the entireties as set out in the complaint were acquired by plaintiff by virtue of his survivorship and not under the joint will of February 25th, 1965.

"5. That the plaintiff has not accepted benefits under the joint will of February 25th, 1965, in any manner which would estop him from denying any contract between himself and his decedent wife or which would estop him from revoking said will or otherwise dealing freely with the properties of her estate.

"It is therefore, ORDERED, ADJUDGED, DECREED AND DECLARED:

"(1) That the plaintiff acquired a fee simple absolute title to the properties of his decedent wife, Ruth Sedberry Olive, under the joint will of February 25th, 1965.

"(2)   That there was no contract between the plaintiff and his decedent wife, Ruth Sedberry Olive, to enter into the joint will of February 25th, 1965, nor does said will constitute a contract between plaintiff and his said wife, Ruth Sedberry Olive, requiring that said joint will remain in effect as the will of the survivor at the time of his death.

"(3)   That the plaintiff is under no disability to convey title to the property described in Exhibit 'D' to the defendants, Biggs, by reason of the execution and existence of said joint will of February 25th, 1965."

The defendant Jean McKay Olive Tolar appealed to the Court of Appeals assigning as error the admission, over objection, of the testimony of Alexander Cook as to his lack of knowledge of any contract, apart from the will itself, between the plaintiff and Ruth Sedberry Olive concerning the execution of a joint will or change therein by one without the consent of the other, the making of Finding of Fact No. 10 and Conclusions of Law 1, 2, 4 and 5 and the entry of the judgment.

·  The Court of Appeals found no prejudicial error and affirmed the judgment of the superior court.

*McCoy, Weaver, Wiggins, Cleveland & Raper for plaintiff appellee.*

*Quillin, Russ, Worth & McLeod for defendant appellant.*

LAKE, J.

The document before us for construction is what is called a joint will. *Ginn v. Edmundson,* 173 N.C. 85, 91 S.E. 696; Atkinson on Wills, 2d ed., § 49; 57 Am. Jur., Wills, § 681. In order to determine its effect upon the present right of the surviving husband to convey an unencumbered fee simple estate in (a) land owned by the wife alone at the time of her death, (b) land then owned by them as tenants by the entireties, and (c) land owned, at the time of the wife's death, by the husband alone, we must determine first the effect of the document as a will and second its effect, if any, as a contract.

[1]   What is called a joint will, is, in effect, the separate will of each person signing it as testator. *Walston v. College,* 258 N.C. 130, 128 S.E. 2d 134; *In Re Davis' Will,* 120 N.C. 9, 26 S.E. 636; 57 Am. Jur., Wills, §§ 688, 735; Annot., 169 A.L.R. 9, 12. It is as if each of them had simultaneously executed separate, identical wills. Thus,

though the document is not executed by one of the signers in the manner prescribed by the statute for the execution of wills, it may nevertheless be properly probated as the will of the other. *In Re Cole's Will*, 171 N.C. 74, 87 S.E. 962. Though revoked by one of the signers, it may continue in effect and be properly probated as the will of the other. *In Re Will of Watson*, 213 N.C. 309, 195 S.E. 772.

**[2, 3]** Nothing else appearing, either signer of a joint will may revoke it, in any manner permitted by statute, during the life of all of the persons signing as testators. *In Re Davis' Will, supra*. Upon the death of one of the persons so signing, without a valid revocation of the document by that person, it will be probated and given effect as his or her will. *In Re Davis' Will, supra; In Re Will of Watson, supra*. Thereafter, upon the death of another person so signing the document, without a revocation of it by him or her, it will then be probated and given effect as the will of that person. *In Re Davis' Will, supra*; 57 Am. Jur., Wills, § 682. Nothing else appearing, though one of the signers has died and the document has been probated as his or her will, the surviving signer may revoke it and, in that event, it cannot be probated as the will of such survivor. *Ginn v. Edmundson, supra; In Re Davis' Will, supra*. That is, the mere execution of a joint will does not establish the existence of a contract by the signers thereof so to dispose of their property. *Ginn v. Edmundson, supra; In Re Davis' Will, supra*; Atkinson on Wills, 2d ed., § 49; 57 Am. Jur., Wills, § 729. The intervening death of one of the signers, followed by the probate of the document as the will of such signer, nothing else appearing, does not impair the right of the survivor to convey property belonging to him at the time of such conveyance. *Ginn v. Edmundson, supra*.

**[4]** Even where there is a contract between the testators not to revoke the joint will, the better view is that the revocation by the survivor is effective to prevent the probate of the instrument as the will of the survivor, leaving the disappointed legatees or devisees under the joint will to their rights, if any, for breach of the contract as beneficiaries thereof. *Allen v. Bromberg,* 147 Ala. 317, 44 So. 771; *Stewart v. Todd*, 190 Iowa 283, 173 N.W. 619, 20 A.L.R. 1272; *Rastetter v. Hoenninger*, 214 N.Y. 66, 108 N.E. 210; *Williams v. Williams*, 123 Va. 643, 96 S.E. 749; *Doyle v. Fischer*, 183 Wis. 599, 198 N.W. 763, 33 A.L.R. 733; Annot., 169 A.L.R. 9, 24, 47; 57 Am. Jur., Wills, § 690; Atkinson on Wills, 2d ed., § 49. Thus, in *Stone v. Hoskins* (1905), P. 194 (Probate Division, England), it was held that a later will, executed by the survivor in violation of his contract not to revoke the joint will, must be admitted to probate since, not-

withstanding such contract, a will is always revocable, but a court of equity may impose a trust upon the devisee under the later will in favor of the beneficiary of such contract.

[5]. We shall consider below the effect of the document before us as a contract between Dr. and Mrs. Olive. Considered only as the will of Dr. Olive, it is revocable by him and does not impair his right to convey properties now owned by him, notwithstanding the fact that it was also executed by Mrs. Olive and has been probated as her will.

[6, 7] We turn now to the effect of this document as the will of Mrs. Olive. Obviously, the will of Mrs. Olive could not and did not devise to Dr. Olive property which, at the time of her death, was already owned by him alone or was owned by them as tenants by the entireties, nor could her will, nothing else appearing, limit his right to convey such properties after her death. Land owned by a husband and wife as tenants by the entireties is not owned by them in shares, but by the two considered as a separate legal being. *Isaacs v. Clayton, Comr. of Revenue,* 270 N.C. 424, 154 S.E. 2d 532. Consequently, nothing else appearing, no interest in such property passes under the will of the first to die. *Honeycutt v. Bank,* 242 N.C. 734, 89 S.E. 2d 598. As Stacy, J., later C.J., said for the Court, in *Davis v. Bass,* 188 N.C. 200, 204, 124 S.E. 566, "Upon the death of one, either the husband or the wife, the whole estate belongs to the other by right of purchase under the original grant or devise and by virtue of survivorship — and not otherwise — because he or she was seized of the whole from the beginning, and the one who died had no estate which was descendible or devisable."

[8] The record shows that in the preparation of this document Dr. and Mrs. Olive had the assistance of an attorney. It is reasonable to assume that when they executed it they were aware of this attribute of a tenancy by the entireties and, consequently, to assume, in the complete absence of any indication to the contrary, that they did not intend the provisions thereof relating to property owned by them as tenants by the entireties to be given effect as parts of the will of the first to die, but intended these provisions to become effective only as parts of the will of the survivor. It is equally reasonable to assume that neither of them intended the provisions of the document relating to the properties owned by the other alone to take effect, except as parts of the will of the owner thereof at the time of such owner's death. Therefore, considering the document as the will of Mrs. Olive, it does not show an attempt by her to devise property owned by her husband alone, or property owned by her and her hus-

band as tenants by the entireties, unless she should survive her husband and thus be the owner of those properties at the time of her own death.

[9] As Denny, J., later C.J., said for the Court, in *Trust Co. v. Burrus*, 230 N.C. 592, 55 S.E. 2d 183, "[W]here the devisor purports to devise property which belongs to the beneficiary, giving it to another, and also devises property of his own to the beneficiary, such beneficiary must make a choice between retaining his own property, which has been given to another, or take the property which has been given him under the terms of the will."

[10] This doctrine of election does not apply, however, unless the intent of the testator to put the beneficiary to an election clearly appears from the terms of the will. *Burch v. Sutton*, 266 N.C. 333, 145 S.E. 2d 849; *Lamb v. Lamb*, 226 N.C. 662, 40 S.E. 2d 29. For example, the doctrine of election does not come into play where it appears that the testator was under the mistaken belief that he or she had the right to devise the property of the person alleged to be under the duty to make the election. *Breece v. Breece*, 270 N.C. 605, 155 S.E. 2d 65; *Burch v. Sutton, supra.*

In *Walston v. College, supra,* the testator was under the mistaken belief that he and his wife held title to land as tenants in common, whereas they actually held it as tenants by the entireties. He and his wife made a joint will purporting to devise this land to the survivor for life and then to Atlantic Christian College. The court found there was no evidence of a contract between them so to do. The will also bequeathed to the wife, absolutely, the personal property of the husband. Upon the death of the husband, the surviving wife brought an action to quiet title to the land. The court held that the wife was not put to an election since it could not be inferred that the husband intended to devise or bequeath anything to her "in lieu of her legal interest as a tenant by the entireties in the land involved."

We think it quite clear that the document before us shows upon its face that Mrs. Olive (and similarly, Dr. Olive) intended that thereby, if she died first, all the property of which she was the sole owner would pass to Dr. Olive as a devise from her and all of the property held by them as tenants by the entireties would pass to him by operation of law so that he would then be the owner of the whole, together with the lands of which he was already the sole owner. Conversely, it was her intent and expectation that, if he died first, she would be the sole owner of the whole of the three types of properties. In that event, and only in that event, she intended that

the provisions in Items Three through Twelve, relating to the land owned by him alone or to the land owned by them as tenants by the entireties, would be given effect as parts of her will. This is not the intent which calls into play the doctrine of election; namely, the intent by her will to devise his property and, in lieu thereof, devise hers to him.

[11]   Thus, the doctrine of election has no application to the present case. Consequently, the document before us, considered only as the will of Mrs. Olive, and Dr. Olive's acceptance of the devise to him thereby, do not deprive Dr. Olive of title to or of the right to convey land which, at the time of Mrs. Olive's death, was owned by him alone or was owned by them as tenants by the entireties.

[12]   The document before us devises to Dr. Olive certain properties which Mrs. Olive alone owned at her death. Though it is joint in form, it must be construed as if it were the will of Mrs. Olive alone to determine what title Dr. Olive took thereunder to those properties. 57 Am. Jur., Wills, § 736.

[13]   Item Two of the will is a clear and express devise of all of the property of Mrs. Olive to Dr. Olive "unconditionally and in fee simple," he having survived her. If the will had stopped with that provision, no question of construction would arise since the technical term "in fee simple" is to be given its technical meaning in the absence of a clear expression of a contrary intention in the will itself. Ray v. Ray, 270 N.C. 715, 155 S.E. 2d 185; Trust Co. v. Waddell, 237 N.C. 342, 75 S.E. 2d 151. Furthermore, G.S. 31-38 provides: "When real estate shall be devised to any person, the same shall be held and construed to be a devise in fee simple, unless such devise shall, in plain and express words, show, or it shall be plainly intended by the will, or some part thereof, that the testator intended to convey an estate of less dignity."

[14]   The Court of Appeals was of the opinion that the dominant purpose of the testator was, first, to provide for the survivor and, second, to provide for the disposition of the properties of both husband and wife if they should die simultaneously. To avoid inconsistency with Item Two, the Court of Appeals construed Items Three through Twelve as limited to the unlikely situation of the simultaneous deaths of Dr. and Mrs. Olive. In our opinion, this construction of such remaining portions of the will is unduly limited and does not reflect the intent of the testatrix as it appears from the entire will.

It is to be observed that in Item Three the attempted devise to the children of the testatrix is to take effect "upon the death of the

survivor, or in the event that our death is simultaneous." This language does not appear in the remaining items, though in Items Five and Six there are provisions as to conditions which may exist "at the time of our death" and "at the time of the death of the survivor of us," and the residuary clause in Item Twelve is a devise and bequest to the children of the testatrix "after the death of the survivor." Likewise, in Item Thirteen there is provision for the appointment of a substitute executor "after the death of the survivor."

[15, 16]    As the Court of Appeals observed, the cardinal principle in the construction of a will is to give effect to the intent of the testator as it appears from the language used in the instrument itself, insofar as that can be done within the limits of rules of law fixed by statute or by the decisions of this Court. *Raines v. Osborne,* 184 N.C. 599, 114 S.E. 849. The intent of the testator is to be determined from the entire instrument so as to harmonize, if possible, provisions which would otherwise be inconsistent. *Clark v. Connor,* 253 N.C. 515, 117 S.E. 2d 465; *Andrews v. Andrews,* 253 N.C. 139, 116 S.E. 2d 436; *Gatling v. Gatling,* 239 N.C. 215, 79 S.E. 2d 466.

[14]    Considering this will in its entirety, we think it apparent that the testatrix was not solely, or even primarily, concerned with the possibility of the simultaneous deaths of her husband and herself in making the provisions for her children. Nor did she intend, in our opinion, by Items Four and Five, to devise the properties there described to a designated child at the expense of her general devise in Item Two of all her property in fee simple to her husband if he survived her. We think it apparent that the intent of the testatrix was that if her husband survived, as he has done, all of her property was to pass to him "unconditionally and in fee simple," but at his death was to pass to the children as specified in Items Three through Twelve of the will, subject to the possibility of a conveyance by him of the property on East Mountain Drive hereinafter noted. Items Five and Six of the will expressly recognize the possibility that the property on East Mountain Drive might not be owned "at the time of our death." We think it unduly restrictive to limit the words "our death" to the simultaneous deaths of the testatrix and her husband. Construing the term "our death" in the light of the circumstances surrounding the execution of this document (see *Trust Co. v. Dodson,* 260 N.C. 22, 33, 131 S.E. 2d 875), we are of the opinion that it means "the death of the survivor," which is the language used in Item Three. Consequently, we hold that the proper construction of the will of Mrs. Olive is a devise "unconditionally and in fee simple"

of all of her property to her husband, followed by a direction as to the disposition to be made of the properties at his death.

In *Barco v. Owens*, 212 N.C. 30, 32, 192 S.E. 862, Stacy, C.J., speaking for the Court, said:

> "The general rule is, that where real estate is devised in fee, or personalty bequeathed unconditionally, a subsequent clause in the will expressing a wish, desire, or direction for its disposition after the death of the devisee or legatee will not defeat the devise or bequest, nor limit it to a life estate. * * * Conditions subsequent, in the absence of compelling language to the contrary, are usually construed against divestment. * * * The absolute devise is permitted to stand, while the subsequent clause is generally regarded as precatory only."

This general rule of testamentary construction was applied to give to the devisee an unrestricted fee simple estate in *Taylor v. Taylor*, 228 N.C. 275, 45 S.E. 2d 368; *Peyton v. Smith*, 213 N.C. 155, 195 S.E. 379; and *Carroll v. Herring*, 180 N.C. 369, 104 S.E. 892. While it is a rule which will yield to "compelling language" showing a contrary paramount intent of the testator, we find no such clear evidence of a contrary intention in this instrument. On the contrary, the document, considered in its entirety, as well as the clear, unequivocal language of Item Two, shows that Mrs. Olive's paramount purpose was to provide for Dr. Olive if he survived her. We, therefore, hold that the document, considered only as the will of Mrs. Olive, devises to Dr. Olive a fee simple estate in the land owned by the testatrix at her death and imposes no limitation upon his right to convey the same.

[17]    There remains for determination the question of whether the document is also a sufficient memorandum of a contract between the husband and wife that the survivor will not revoke the document as his or her own will. "It is * * * well settled that where a husband and wife make an agreement for the disposition of their respective estates, in a particular manner, and execute either a joint will or separate wills providing for the disposition of their estates in accordance with the agreement, such agreement may be upheld by specific performance." *Godwin v. Trust Co.*, 259 N.C. 520, 529, 131 S.E. 2d 456. Such joint will may, itself, be a sufficient memorandum of such contract to satisfy the Statute of Frauds. *Godwin v. Trust Co., supra.*

[18]    The great weight of authority is to the effect that where a husband and wife enter into a contract, otherwise valid, to make, and do make, a joint will or separate wills, whereby each devises his

or her property to the survivor of them and the survivor devises his or her property to others, according to a specified plan of distribution, and one spouse dies without revoking his or her will, the survivor, accepting the benefits of the will of the deceased spouse, is bound by the contract. His or her subsequent revocation of the will is a breach of such contract for which a court of equity will give relief in a suit by those who would have been the beneficiaries of such will had the survivor not revoked it. In such event, equity will fasten a trust upon the properties which the survivor so contracted to devise, which trust is enforceable against a subsequent taker of the property other than a bona fide purchaser for value without notice. See: *Dufour v. Pereira*, 1 Dick. 419, 21 English Rep. 332; *Allen v. Bromberg, supra; In Re Johnson's Estate*, 389 Ill. 425, 59 N.E. 2d 825; *Curry v. Cotton*, 356 Ill. 538, 191 N.E. 307; *Stewart v. Todd, supra; Rastetter v. Hoenninger, supra; Stevens v. Myers*, 91 Ore. 114, 117 P. 37, 2 A.L.R. 1155; *Nye v. Bradford*, 144 Tex. 618, 193 S.W. 2d 165, 169 A.L.R. 1; *Wilson v. Starbuck*, 116 W. Va. 554, 182 S.E. 539, 102 A.L.R. 485; *Allen v. Ross*, 199 Wis. 162, 225 N.W. 831, 64 A.L.R. 180; *Doyle v. Fischer, supra; Annot.*, 169 A.L.R. 9, 57-58, 61; 57 Am. Jur., Wills, §§ 717, 718, 721.

[19, 20]   In the present case, the joint will declares, "We, Robert M. Olive, Sr., and Ruth Sedberry Olive, * * * *in consideration of each making this our Last Will and Testament,* do hereby make, publish and declare this instrument to be jointly as well as severally our Last Will and Testament." (Emphasis added.) This is contractual language. It is sufficient, in conjunction with the reciprocal devises and bequests, to show the existence of a contract between the husband and wife, pursuant to which the joint will was executed by them. The testimony of the attorney who drafted the document was simply that he knew of no agreement between Dr. and Mrs. Olive with respect to the execution of the will, or the right of the parties thereafter to change the will, "other than what is contained in this will." We need not determine whether the admission of this evidence, over objection, was error, as the appellant contends, for the reason that it was not prejudicial to the appellant. There is nothing in the record to suggest any agreement between Dr. and Mrs. Olive "other than what is contained in this will." Since, in our view, the will contains within itself clear evidence of such agreement, which is not contradicted, the admission of this testimony was not prejudicial to the appellant.

G.S. 52-6(a) provides:

"No contract between husband and wife made during their coverture shall be valid to affect or change any part of the real

estate of the wife * * * unless such contract * * * is in writing, and is acknowledged before a certifying officer who shall make a private examination of the wife according to the requirements formerly prevailing for conveyance of land."

**[21-23]** The document before us was not acknowledged in conformity with this statute. This does not affect its validity as the will of Mrs. Olive but, by the terms of the statute, it could not have validity as a contract affecting or changing her real estate. A contract by which one binds himself to make a specified testamentary disposition of his real property is a contract affecting that property. Consequently, a contract between husband and wife prescribing the testamentary disposition of their properties is not binding upon the wife unless the procedure prescribed by G.S. 52-6 is followed. During the life of the wife, such a contract, not acknowledged as prescribed by this statute, is not binding upon the husband since, as to him, there is a failure of consideration. When, however, the wife dies, leaving the will for which her husband bargained with her, the contract is thereafter binding upon him. In 1 Williston on Contracts, 3rd ed., § 106, it is said: "[W]hile a promise void for incapacity of the promisor will not support a counter-promise, if the void promise is actually performed, the performance may become sufficient consideration to support the counter-promise. And other instances may be found where a bilateral agreement originally unenforceable gives rise, when performed on one side, to a binding unilateral contract."

In *Godwin v. Trust Co., supra,* such a contract, not acknowledged by the wife as required by G.S. 52-12, now G.S. 52-6, was held to have been incorporated by reference into the separate, simultaneous wills of the husband and wife. The wife died leaving her will in effect. The husband then made another will and died. In an action brought to compel distribution according to the former will, which he had made pursuant to the contract, this Court held that the husband was bound by the contract and the defendant, taking under the subsequent will made by the husband in breach of the contract, took the property, subject to the rights of the beneficiary in the former will. The *Godwin* case did not hold that, by virtue of the doctrine of incorporation by reference, the contract of the wife to make a specified testamentary disposition of her property was binding upon her notwithstanding G.S. 52-6, nor did it hold that, though the requirements of the statute have not been met, the executory contract of the wife to make such will is consideration for the promise of the husband, so as to make the contract binding upon him during her lifetime. Those questions were not before the Court in the *Godwin* case and they are not before us in the present case. We hold, how-

ever, that the wife having died, leaving a will in accordance with the contract, the husband is bound by his contract to make the agreed testamentary disposition of his own property.

It is necessary, however, to determine what the contract was. As noted above, the document, in Items Five and Six, clearly contemplates the possibility that the property on East Mountain Drive, which is the subject of the contract by Dr. Olive to sell and convey to the defendants Biggs, might not be owned by the surviving testator at death; that is, it might be transferred by an *inter vivos* conveyance.

[24]    In Sparks, Contracts to Make Wills, p. 53, it is said that where the contract is for a devise of specific real estate, as distinguished from all or a fractional part of the promisor's estate, any subsequent conveyance, other than to a bona fide purchaser, is ineffective as against the beneficiary of the contract. In our opinion, this statement is too sweeping in its extent. Each such contract must be construed to determine the intent of the parties thereto with reference to the right of the owner of the property to make an *inter vivos* conveyance. See Annot., 108 A.L.R. 867, 868-9.

[25, 26]    We find in the document before us a clear indication that Dr. and Mrs. Olive intended the survivor to have full power to sell and convey the land on East Mountain Drive, referred to in Items Five and Six. We find, however, nothing therein to indicate an intent that the survivor might make an *inter vivos* sale or conveyance of other properties specifically mentioned. As to the effect of such contract upon the right of the survivor to make an *inter vivos* transfer or conveyance of residuary property and as to the effect of a contract to devise or bequeath all or a fractional part of one's estate upon his right of *inter vivos* conveyance, see: *Sample v. Butler University*, 211 Ind. 122, 4 N.E. 2d 545, 5 N.E. 2d 888, 108 A.L.R. 857; 57 Am. Jur., Wills, § 710; Atkinson on Wills, 2d ed., § 49.

We hold, therefore, that Dr. Olive is bound by the contract shown in the document before us. His right to sell and convey the property on East Mountain Drive, referred to in Items Five and Six, is not restricted by the contract. He may not, however, make a testamentary disposition of any property contrary to this contract, or revoke the joint will as his will, or make an *inter vivos* conveyance or transfer of any other property specifically dealt with in this document which will prevent a court of equity from subjecting the property, so transferred in breach of the contract, to the rights of the beneficiaries thereof prior to the acquisition of such property by a bona fide purchaser for value.

The superior court was in error in concluding and adjudging that the joint will does not constitute a contract between the plaintiff and his wife requiring such will to remain in effect as the will of the plaintiff.

This matter is remanded to the Court of Appeals for the entry of a judgment further remanding it to the superior court for the entry by it of a judgment in conformity with this opinion.

Error and remanded.

HIGGINS, J., dissenting:

A study of the will involved in this proceeding convinces me that all issues were correctly resolved by the trial judge and by the Court of Appeals. I must dissent from any decision or opinion to the contrary.

Item Two of the will furnishes a key to the intent of the testators. *"We, and each of us,* devise and bequeath all of his or her property, unconditionally and in fee simple, to the survivor, *in the event that one of us survives the other."* (Emphasis added) Necessarily, there must be a survivor in order for Item Two to become controlling. Item Two, in the absence of simultaneous death, leaves to the survivor a full, absolute and final disposition of all the other's property. However, had there been no survivor, that is, a simultaneous death, Item Two would be inapplicable and the subsequent items would control. Actually there was a survivor and in my judgment the subsequent dispositive items of the will are inapplicable. It seems clear that Item Two was intended to govern in case there was a survivor, and that the subsequent items were intended to control in case of simultaneous death, but not otherwise. This construction is borne out by the will, which admittedly is not free from some ambiguities.

Item Two begins "We and each of us devise and bequeath all of his or her property, unconditionally and in fee simple, to the survivor . . ." and when properly construed is the separate will of each maker of his property to the other, if there is a survivor. If there is no survivor, that is in case of simultaneous death, there is no one to take under Item Two, and there being no taker, the rules of intestacy would dispose of the property of each. In order to obviate this situation, the subsequent items of the will were intended to take over in such contingency, that is, no survivor. While Item Two begins "We and each of us," all subsequent items begin "We". The words "each of us" in Item Two indicate that Item Two is the sep-

arate will of each, but in the subsequent items the beginning is "We devise and bequeath", which shows the joint will of both. This indicates to me that Items Three through Twelve, inclusive, were only intended to apply in case of simultaneous death, when neither could take under Item Two.

The rules of interpretation applicable here are stated in a number of our cases. In *Morris v. Morris,* 246 N.C. 314, 98 S.E. 2d 298, this Court held: "The discovery of the intent of the testator as expressed in his will is the dominant and controlling objective of testamentary construction, for the intent of the testator, as so expressed, is his will." (Citing authority) "And greater regard is to be given to the dominant purpose of the testator than to the use of any particular words." (Citing authority)

In *Worsley v. Worsley,* 260 N.C. 259, 132 S.E. 2d 579, the Court said: "The general rule is, that where real estate is devised in fee, or personalty bequeathed unconditionally, a subsequent clause in the will expressing a wish, desire, or direction for its disposition after the death of the devisee or legatee will not defeat the devise or bequest, nor limit it to a life estate. . . . In construing a will every word and clause will be given effect if possible, and apparent conflicts reconciled, and irreconcilable repugnancies resolved by giving effect to the general prevailing purpose of testator." (Citing authority)

Under these rules, notwithstanding inconsistencies, it is my conclusion that the intent of Dr. Olive and his wife was to give to the survivor all the other's property "unconditionally and in fee simple". But if neither survived the other, then Items Three through Twelve, inclusive, were intended as their joint will and disposed of all property owned by both. I vote to affirm the decision of the Court of Appeals.

BOBBITT, C.J., joins in dissenting opinion.